Commonwealth ex rel. O'Brien *v.* O'Brien, Appellant.

Argued March 20, 1956; reargued October 5, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Irving R. Shull*, with him *Alfred I. Ginsburg*, and *Bernard L. Lemisch*, for appellant.

*Norman R. Bradley*, for appellee.

OPINION BY WRIGHT, J., December 28, 1956:

In an action for the support of a minor child, born during wedlock, does the defendant have the right to require blood grouping tests under the provisions of the Act of May 24, 1951 P. L. 402, 28 PS 306? This statute reads as follows: "In any proceeding to establish paternity, the court, on motion of the defendant,

shall order the mother, her child and the defendant to submit to one or more blood grouping tests by a duly qualified physician to determine whether or not the defendant can be excluded as being the father of the child, and the results of such tests may be received in evidence but only in cases where definite exclusion of the defendant is established".

The parties were married on October 24, 1938, and were divorced February 27, 1950. Three children were born, one of whom died immediately after birth in 1943. The other two children are Barbara, born June 25, 1939, and Richard, born February 11, 1947. While the husband left the common habitation in 1942, there was no evidence of non access. "He came to the house any time he wanted to". On May 23, 1946, an order in the amount of $15.00 per week was entered for Barbara's support. On March 6, 1950, by agreement of the parties, this order was increased to $25.00 per week. On October 28, 1954, a petition was filed to amend the order so as to include Richard as well as Barbara. The court below refused to order blood grouping tests and amended the order to $30.00 per week for the two children. The order will be affirmed.

Appellant contends "that the only important word that requires definition in order to determine the scope of the Act is 'proceeding' ". This contention overlooks the significant fact that the word "proceeding" is limited and modified by the words "to establish paternity". The order of support in the instant case was entered under the provisions of Section 733 of the Act of June 24, 1939, P. L. 872, 18 PS 4733. We have said that this act is "a quasi criminal statute", and that its purpose is protection rather than punishment: *Commonwealth v. Widmeyer*, 149 Pa. Superior Ct. 91, 26 A. 2d 125. Our only prior consideration of the Act of 1951 was in *Com-*

monwealth v. Dean, 172 Pa. Superior Ct. 415, 94 A. 2d 59, which is not here controlling. That case involved a prosecution for fornication and bastardy, clearly a proceeding to establish paternity. We held that a petition for blood grouping tests, presented 38 days after final judgment, came too late. In the only reported lower court case dealing with the precise question, President Judge KNIGHT of the Montgomery County Court ruled that an action for support under Section 733 of the Act of 1939 was not a proceeding to establish paternity. See Commonwealth v. Heydt, 3 D. & C. 2d 129. This was the position taken by Judge SPAULDING in the case at bar, and we think it is the correct view.

The birth certificate offered in evidence in the instant case shows that appellant was Richard's father. See the Act of June 29, 1953, P. L. 304, §810, 35 PS 450.810.[1] By this recent statute, the legislature has reaffirmed the long established public policy which supports the legitimacy of children born during wedlock. The presumption of legitimacy is one of the strongest known to the law. It stands until met with evidence which makes it clearly appear that the husband cannot be the father of the child: Commonwealth ex rel. Moska v. Moska, 107 Pa. Superior Ct. 72, 162 A. 343. So strongly does the policy of the law favor legitimacy that neither husband nor wife may testify as to non access: Commonwealth v. Oldham, 178 Pa. Superior Ct. 354, 115 A. 2d 895.

Appellant argues that the wife did not mention Richard when requesting alimony pendente lite in the

---

[1] "Any record or duly certified copy . . . shall constitute prima facie evidence of its contents, except that in any proceeding in which paternity is controverted and which affects the interests of an alleged father or his successors in interest no record or part thereof shall constitute prima facie evidence of paternity *unless the alleged father is the husband of the mother of the child*" (italics supplied).

divorce proceeding, or when the order for Barbara's support was increased, and that the wife did not request support for Richard for over seven years. These circumstances do not constitute the type of evidence required to rebut the presumption of legitimacy. A mother cannot do impliedly that which she cannot agree to do specifically, namely, by her own agreement limit the right of the child to support: *Commonwealth v. Beavin,* 168 Pa. Superior Ct. 73, 76 A. 2d 653. The delay in her demand does not relieve the husband of his responsibility: *Commonwealth ex rel. Rovner v. Rovner,* 177 Pa. Superior Ct. 122, 111 A. 2d 160.

We do not find in the Act of 1951 a clear and express mandate to depart from a rule which has been so firmly established and so long followed. Nor do we believe that it was the intention of the legislature to remove the protection thrown around a child born during the marriage of his mother. Years ago an act was passed[2] which provided that "no interest or policy of the law shall exclude a party or person from being a witness in any civil proceeding". The Supreme Court said: "The language of that act at first blush might seem to include a case" involving the right of parents to bastardize their child, born in wedlock. However, it held that such a result was not in the legislative mind, and that the act "was not intended to abolish a valuable rule of law founded in good morals and public decency": *Tioga County v. South Creek Township,* 75 Pa. 433. Just recently, in an opinion by Judge WOODSIDE, we rejected a contention in a support action that the rule was changed because of the provisions of Section 18 of the Act of May 10, 1951, P. L. 279, 62 PS §2043.24, which states that "Husband and wife are competent witnesses . . . to any relevant matter, includ-

---

[2] Act of April 15, 1869, P. L. 30.

ing marriage and parentage": *Commonwealth ex rel. Ranjo v. Ranjo*, 178 Pa. Superior Ct. 6, 112 A. 2d 442.

It has been suggested that actions for support can in some manner be divided into two classes, one wherein the child was conceived while the mother and her husband were living together, the other wherein the child was conceived while the mother and her husband were living apart, and that a case of the second type is a proceeding to establish paternity. Nothing in prior decisions, or in the Act of 1951 itself, furnishes any basis whatever for such a distinction.

To uphold appellant's contention would mean that paternity could be brought into issue in every support case. In view of the bitterness which frequently exists between husband and wife at such a time, there is little doubt that paternity would often be questioned for the sole purpose of embarrassment and delay. To order a blood grouping test in the case at bar would do more than establish a new rule of evidence. It would create a whole new philosophy concerning the presumption of legitimacy. This we think the legislature did not intend to do by the Act of 1951.

Order affirmed.

---

DISSENTING OPINION BY WOODSIDE, J.:

I cannot agree with the statutory interpretation of the majority in this case, nor with the reasoning that leads them to a conclusion which I consider unjust, unreasonable, and unwarranted.

The Act of May 24, 1951, P. L. 402, 28 PS §306 requiring blood grouping tests, and quoted at length in the first paragraph of the majority opinion, applies to "any proceeding to establish paternity."

The proceeding in the case before us is brought under section 733 of The Penal Code of June 24, 1939, P.L.

872, as amended, 18 PS §4733, the relevant part of which provides: "If any . . . , *father*, . . . neglects to maintain *his* . . . *children* . . . the court of quarter sessions . . . after hearing in a summary proceeding, may order the person against whom complaint has been made or petition filed, being of sufficient ability, to pay such sum as said court shall think reasonable and proper for the comfortable support and maintenance of the said . . . *children* . . ." (emphasis supplied)

Under this section of The Penal Code no order for the support of a child can be entered against the defendant unless it is first determined in the proceeding that he is the father of the child. In every case brought under this section for the support of a child, paternity must be admitted by the defendant, or proved by competent evidence. Paternity is the basic issue of the case. In proceedings under this section, paternity is not only one of the issues to be established, but the issue upon which rest the others, to wit, whether the *father* neglected to maintain *his children*, and the sum reasonable and proper for *his* children's support and maintenance.

The fact that paternity is generally admitted by the defendants in these proceedings, or is difficult, by reason of the rules of evidence, for the defendants to challenge, does not make it any less the basic issue to be established in these proceedings. Neither does the fact that establishing paternity is not the sole issue in these proceedings render them any the less proceedings to establish paternity. In fornication and bastardy proceedings, establishing paternity is not the sole issue. On the bastardy charge alone the amount of the order is also involved there, as here.

The legislature never intended the Act of 1951 to be applied only to bastardy cases. If it did so intend, it

would have started the section with "In bastardy cases" instead of "In *any* proceeding to establish paternity." (Emphasis supplied.)

The use of the word "any" by the legislature should not be ignored. "Any" is used in assertions with emphasis on unlimited scope, according to Webster's New International Dictionary (Second Edition) unabridged, and is there defined as "indicating a person, thing, etc., as one selected without restriction or limitation of choice with the implication that everyone is open to selection without exception."

Much of the majority opinion is devoted to a discussion of presumption of legitimacy, the birth certificate, and non-access. These all relate to establishing paternity in the proceeding. How then can it be said that this is not a proceeding to establish paternity?

It seems clear that this is a proceeding to establish paternity, but assuming that there is some doubt, any such doubt should, I think, be resolved in favor of having the Act of 1951 apply to this proceeding.

Except for the most compelling reasons, which we shall hereafter discuss, the rules of evidence should facilitate the determination of truth, not hinder it; they should promote justice, not foster injustice.

The courts, continually looking back to precedents for their wisdom, far too frequently fail to accept the guiding lights of the present. We should make a greater effort to keep pace with scientific developments which aid in the determination of the truth.

The proceeding here is to determine whether the defendant is the father of the petitioner's son Richard, born February 11, 1947, and if so, what order should be made. The parties were married in 1938, separated in 1942 and divorced in 1950.

In the divorce action the wife filed a petition for alimony pendente lite naming as a child of the parties, Barbara, born in 1939, but not naming Richard. An order of support for Barbara was obtained in 1946, and increased in 1950, but no request was made of defendant for the support of Richard until the action was brought in 1954.

If Richard is the child of the defendant he should be compelled to support his child; if Richard is not the child of the defendant, no order should be made against him. There are scientific means which may conclusively decide the question. Why should we not use them? Why should the petitioner or the Commonwealth fear to know the truth? Why should the courts suppress the truth?

At the hearing in this case the petitioner admitted the separation in 1942, approximately five years before Richard was born.

Neither in the petition nor in her testimony does she say that the defendant is the father of Richard. In the petition she refers to "their daughter" Barbara, and to Richard as "born of the marriage between relatrix and defendant." Her counsel contends that this merely followed the usual form in Philadelphia, and it may be that no great significance should be given it. However, in her testimony she set forth only that she was married to the defendant, that the child was born in 1947, and that she was not divorced until 1950. At no time did she testify that the defendant was in fact the father of the child. Neither did she testify that the defendant had intercourse with her or access to her after the separation, except on cross examination when she said that after she and her husband separated in 1942 he lived apart from her "but he used to come over to the house . . . We didn't live with each other, but

he came to the house any time he wanted to." The defendant said he stopped at the wife's home weekly to pick up his daughter, Barbara.

Although she could not have testified to non-access, she could testify to access, and to intercourse with her husband. See *Cairgle v. American Radiator and Standard Sanitary Corp.*, 366 Pa. 249, 257, 258 and cases there cited.

The petitioner, having failed to testify that defendant is the father of Richard, depended upon the presumption of legitimacy arising from the marriage and the birth certificate, to establish paternity.

In *Cairgle v. American Radiator and Standard Sanitary Corp.*, 366 Pa. 249, 257, 77 A. 2d 439 (1951), where the mother and her husband were separated prior to the conception of the children whose legitimacy was in issue, the court held that even though *the mother of the children testified that she had intercourse with her husband during the time when the children were conceived, and even though she occasionally saw her husband at his home,* there was other evidence which overcame the presumption of legitimacy, and the compensation authorities were justified in finding that the children were illegitimate.

If there is any possible justification in not requiring a blood test in this case, it must be based upon sociological reasons. As we pointed out in our dissent in *Com. v. Watts*, 179 Pa. Superior Ct. 398, 408, 116 A. 2d 844 (1955), not all rules of evidence are designed to determine the truth, but some are designed to establish a desired relationship between parties, or to strengthen family ties. Assuming, without admitting, that there are sociological reasons for establishing a conclusive presumption of legitimacy when a child is born or conceived while its mother and her husband are living to-

gether as husband and wife, I can see no sociological or other reason to apply a conclusive presumption of legitimacy where the mother and her husband were, as here, "living apart" when the child was conceived and born.

This position is supported by the holding of the Supreme Court in *Cairgle v. American Radiator and Standard Sanitary Corp.*, supra.

I think there is every reason to apply the provisions of the Act of 1951 to this proceeding, and that the legislature intended to do so.

Therefore, I dissent.

ERVIN and CARR, JJ., join in this dissent.