## Commonwealth ex rel. Weston, Appellant, *v.* Weston.

Argued June 13, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Seymore H. Johnson, Jr.,* for appellant.

*Sadie T. M. Alexander,* for appellee.

OPINION BY WOODSIDE, J., September 12, 1963:

The parties in this support case were married August 4, 1956, and separated January 1, 1963. While they were living together as husband and wife, the two children who are the subjects of this support action were born, LaTifa Weston on May 9, 1959, and Kasseem Weston on October 18, 1960.

After the parties separated, the wife brought an action against her husband for the support of herself and the two children. The father then filed a petition asking for an order for blood tests under the Act of July 13, 1961, P. L. 587, 28 P.S. §307.1 et seq. known as the Uniform Act on Blood Tests to Determine Paternity. In the petition, apparently for the first time, the defendant questioned the paternity of the children who presumably were previously accepted and supported by him as his own.

The court below summarily ordered the blood test upon the defendant's petition. It was "of the opinion that under the decision of the Superior Court in Commonwealth ex rel. Goldman v. Goldman, 199 Pa. Superior Ct. 274 (September 14, 1962) [it] had no alternative but to enter the order prayed for in the husband's petition."

There is something inherently repulsive about a man questioning the paternity of children who were conceived by his wife and born to her while he was living with her and who were accepted and held out to the world by him as his children until his and his wife's personal differences led to a support action.

It has been the law of this Commonwealth since its earliest days that a husband could not question the legitimacy of children under such circumstances. Both he and his wife are denied the right to testify that they did not have intercourse within the time when she conceived the child.

The children of this case are relatively young, but if a compulsory blood test may be ordered in this case it may be ordered in a case involving older children. It is unfortunate for a child when circumstances cause it to doubt its paternity, but it is cruel for the law to inject such doubts into a child's mind when there are no circumstances to support the doubts except an allegation by an irate man who previously had been known to the child and the world as its father.

It is the taking of a blood test, and not the result of it, which does the harm. The test cannot prove paternity. Pricking the skin to get the blood is an act which plants indelibly upon the mind of a child the doubt as to its paternity which it will carry thereafter forever. Support actions generate more emotion than any other legal actions. Parties frequently lose all reason in the height of the controversy. (The shooting of two Pennsylvania judges by defendants in support actions during the last decade is only one example of this.) Defendants in the heat of these actions should not be provided a legal vehicle whose chief use will be to embarrass their wives and injure innocent children in a manner no decent man would do under normal circumstances.

In the case of *Commonwealth ex rel. O'Brien v. O'Brien*, 390 Pa. 551, 136 A. 2d 451 (1957), the Supreme Court held that the blood test Act of May 24, 1951, P. L. 402 did not apply to actions brought to obtain an order of support for a child born during wedlock. Thereafter, the legislature repealed the Act of 1951 and passed the Act of 1961, supra. In *Commonwealth ex rel. Goldman v. Goldman*, 199 Pa. Superior Ct. 274, 184 A. 2d 351 (1962), we held that the Act of 1961, supra, applied to actions brought for the support of children born during wedlock, but suggested that a husband who was living with his wife as her husband when a child was born to her and accepted that child as his own and held it out as his own was estopped from denying paternity of that child. In that case the defendant had left his wife shortly after one of the two children in question was born and prior to the birth of the second child. We affirmed an order directing that a blood test be taken.

Here, the defendant had lived with his wife for several years after the birth of both children. There is no suggestion that he did not accept them as his

children prior to filing his petition. Under these circumstances, the court below was not bound by the *Goldman* case, supra, to order a blood test. We think it should have refused the petition of the defendant, at least until it was shown that the defendant had not supported and accepted these children as his own.

There is a motion to quash this appeal on the ground the order is interlocutory. We allowed an appeal under similar circumstances in *Commonwealth ex rel. Goldman v. Goldman*, 199 Pa. Superior Ct. 274, 184 A. 2d 351 (1962), supra. We believe that the motion to quash should be dismissed under the authority of *Myers v. Travelers Insurance Company*, 353 Pa. 523, 46 A. 2d 224 (1946). See also 2 P.L.E. Appeals §40 and *Lovering v. Zoning Board of Adjustment*, 406 Pa. 339, 178 A. 2d 740 (1962).

Order directing the blood test is reversed.

ERVIN, J., dissents and would affirm on the opinion of the court below.

---

CONCURRING OPINION BY MONTGOMERY, J.:

My views on this subject are fully set forth in my dissenting opinion in *Commonwealth ex rel. Goldman v. Goldman*, 199 Pa. Superior Ct. 274, 184 A. 2d 351, in which Judge WATKINS joined. It is, therefore, unnecessary to discuss them further except to say that I readily concur in the refusal of a blood test in the present case.

WATKINS, J., joins in this concurring opinion.

---

DISSENTING OPINION BY WRIGHT, J.:

I fully agree that it is "inherently repulsive" to permit a father to question the paternity of his children in a support proceeding. This was a compelling rea-

son for my majority opinion in *Commonwealth ex rel. O'Brien v. O'Brien,* 182 Pa. Superior Ct. 584, 128 A. 2d 164, affirmed 390 Pa. 551, 136 A. 2d 451, in which the writer of the present majority opinion filed a dissent. We held in the *O'Brien* case that the Act of May 24, 1951, P. L. 402, 28 P.S. 306, was not intended to require blood grouping tests in an action for support of children born during wedlock. The legislature then repealed the Act of 1951, and adopted the Uniform Act on Blood Tests to Determine Paternity, Act of July 13, 1961, P. L. 587, 28 P.S. 307.1 et seq. We were thereafter required to rule that, in view of the change in legislative intent, an order requiring blood tests in a support case was proper. See *Commonwealth ex rel. Goldman v. Goldman,* 199 Pa. Superior Ct. 274, 184 A. 2d 351. In that case, I concurred only in the result because I was not in agreement with dicta in the majority opinion relating to the doctrine of estoppel. It should be noted that, in the *Goldman* case, one of the children involved had been born prior to the separation of the parents so that, if the doctrine of estoppel was applicable, it should have been invoked. In the instant case, the majority is expressly writing the doctrine of estoppel into the Act of 1961. This is plainly judicial legislation and, although I like the result, I am compelled to dissent. If the present legislative policy concerning blood tests is to be changed, it must be accomplished by action of the general assembly.