ACKER, J.,
— The issue for determination by this court is whether petitioner against whom a nonsupport order had previously been entered may require that the natural mother and the child *765 submit to blood tests pursuant to the provisions of the Act of July 13, 1961, P. L. 587, sec. 1, et seq., 28 PS §307.1. The matter was presented by a rule to show cause. The natural mother appeared without counsel. Testimony was received from which this court makes the following findings of fact.
FINDINGS OF FACT
1. Petitioner and respondent were married on December 31, 1952, and became divorced from each other on September 29,1960.
2. That the marriage resulted in several separations, one being from January 1953 until December 1954 when petitioner was in the military service and subsequent separations for periods varying from two to four weeks from December 1954 until the time of the divorce.
3. The child which is the subject of this action is Shelia A. Phillips, born November 11,1958.
4. The parties had been living together and were married during the time of the conception and for approximately six months after the pregnancy eventually resulting in the birth of the child, Shelia.
5. That the parties had strained relations, but did engage in sexual relations during the medically possible period when the child could have been conceived.
6. Petitioner visited respondent in Sharon General Hospital after the birth of the child and was named in the birth certificate as the natural father, although he had no knowledge of the manner that the birth certificate was made out, nor how it read.
7. That petitioner sporadically paid support for Shelia until respondent remarried on June 2, 1960, at or about which time petitioner was out of work and unable to pay support and was informed by the new husband of respondent that he need not pay support *766 as long as the husband could take Shelia as a dependent upon his income tax.
8. That Shelia visited with petitioner on numerous occasions after her birth and that on at least two occasions asked petitioner if he was in fact her father and that he responded on both occasions that he was.
9. That Shelia weighed six pounds, seven ounces at the time of birth and was a full nine-month pregnancy child.
10. That in March of 1968 after the remarriage of petitioner he commenced visiting a series of doctors to determine why he was no longer able to reproduce and was informed by all physicians that he was sterile.
This court does not consider the contention of petitioner that he is sterile for he has utterly failed in his proof to establish sterility at or about the time the child, Shelia, was conceived in 1958. A finding of sterility in 1968, some 10 years later, is of no probative value.
Initially, our courts held that a husband does not have the right to demand blood grouping tests because the Act of May 24, 1951, P. L. 402, was not intended to apply to such actions: Commonwealth ex rel. O’Brien v. O’Brien, 182 Pa. Superior Ct. 584, 128 A. 2d 164 (1956), affirmed in 390 Pa. 551, 136 A. 2d 451 (1957). The legislature repealed the above-mentioned Act of 1951 and adopted the Uniform Act on Blood Tests to Determine Paternity of 1961, supra. In Commonwealth ex rel. Goldman v. Goldman, 199 Pa. Superior Ct. 274, 184 A. 2d 351 (1962), this statute was interpreted and held to extend the right of blood tests to children born during wedlock.
A year later in Commonwealth ex rel. Weston v. Weston, 201 Pa. Superior Ct. 554, 193 A. 2d 782 *767 (1963), a lower court which granted a blood test based on the Goldman decision, supra, and holding that it had no alternative but to enter the order prayed for was reversed. There, the appellate court, in effect, read into the statute the doctrine of estoppel. This doctrine was affirmed most recently in Commonwealth ex rel. Hall v. Hall, 215 Pa. Superior Ct. 24, 257 A. 2d 269 (1969). In a dissent by Judge Hoffman, the contention that there is something inherently repulsive about ordering a child to submit to a blood test was questioned, believing that the pricking of skin to get blood does not indelibly implant upon a child’s mind doubts as to his paternity. This may well be true in the case of infants. However, the child involved in this case is 12 years of age and has already questioned her father concerning paternity and has been reassured twice. We believe that to now require her to travel to a hospital and have blood removed would cause additional questions in her mind.
The language of Judge Woodside in Commonwealth ex rel. Weston v. Weston, supra, at page 556, expresses our view concerning this matter, “There is something inherently repulsive about a man questioning the paternity of children who were conceived by his wife and born to her while he was living with her and who were accepted and held out to the world by him as his children until his and his wife’s personal differences led to a support action.”
So holding, the rule is discharged.
ORDER
And now, June 8, 1971, the rule to show cause why Shelia A. Phillips, Margaret Austin and Jeremiah Phillips should not be required to submit to a blood test is discharged.