**Anzulewicz v. Anzulewicz**

*Louis Sager,* for plaintiff.
*David Kaplan,* for defendant.

SALUS, *J.,* May, 8, 1980—The present action presents both unique facts and unique questions of law.

Paul and Marilyn Anzulewicz were married on September 7, 1963. They originally separated on August 27, 1971. Two children, Steven and Michael, were born during the period of cohabitation.

Following the original separation, an agreed order was entered requiring Paul to pay $45 per week to support Steven and Michael. That order was entered on October 5, 1971.

A third child, Eric, whose paternity is disputed, was born August 28, 1972, just 11 days before the decree divorcing Paul and Marilyn was signed. The original birth certificate named Ernest Sematis as the boy's father. The mother admits that Paul was not the boy's father.

Shortly after the boy was born and Paul and Marilyn divorced, Paul and Marilyn reconciled. An order suspending the support order was signed by Judge Henry on September 21, 1972. Paul and Marilyn never remarrried, but lived together apparently as husband and wife. Paul treated Eric as a son and Eric's birth certificate was amended to name Paul as his natural father.

A second separation occurred and the 1971 support order was reactivated on August 21, 1978 by order of Judge Brown. That 1971 order required support for only the two children whose paternity Paul admitted.

In January, 1979, Marilyn filed a petition to increase support alleging inter alia that she now had custody of three children.

Paul denied he had an obligation to support Eric and requested blood tests to determine paternity. Marilyn objected to the blood tests arguing that the claim for support for Eric was based on equitable estoppel and not because Paul was Eric's natural father.

Following argument, Judge Davenport ordered the blood tests to be taken. The results established that Paul could not be Eric's father.

The question of support went before the master on March 14, 1980. At that time the master found no obligation on the part of Paul to support Eric. The order of 1971 was amended, however, to require Paul to pay $60 per week to support the two children whose paternity he admitted.

Exceptions to the finding of the master that no obligation was owed Eric were filed and the matter came to this court for a trial de novo. Following hearing and argument, this court must support the finding of the master. That conclusion is dictated for several reasons.

First, there is the procedural reason that this court is bound by the ruling of Judge Davenport. On July 12, 1979, Judge Davenport entered an order directing that blood tests be taken by the parties. Permission to assert the defense of nonpaternity is implied by that order. The essence of the equitable estoppel argument is that Paul should be barred

from claiming now that he is not Eric's father. Most of the case law concerning equitable estoppel to bar the defense of lack of paternity has arisen in cases questioning the propriety of administering blood tests. The courts have held: "It is the taking of a blood test, and not the result of it, which does the harm. The test cannot prove paternity. Pricking the skin to get the blood is an act which plants indelibly upon the mind of a child the doubt as to its paternity which it will carry thereafter forever." Com. ex rel. Weston v. Weston, 201 Pa. Superior Ct. 554, 557, 193 A. 2d 782 (1963). The order allowing the blood test was appealable: Weston, supra; Com. ex rel. Hall v. Hall, 215 Pa. Superior Ct. 24, 257 A. 2d 269 (1969). By allowing the test, Judge Davenport allowed Paul to assert the defense. This court is bound by Judge Davenport's decision and by the Uniform Act on Blood Tests to Determine Paternity, 42 Pa.C.S.A. §§6136 and 6137. Those sections mandate a finding of nonpaternity based on the test results.

This court also feels constrained to support the findings of the master based on the merits of the case at bar. This does not appear to be an instance where equitable estoppel applies. Putative fathers have been estopped from denying the paternity of children: Com. ex rel. Gonzalez v. Andreas, 245 Pa. Superior Ct. 307, 311-12, 369 A. 2d 416 (1976). Cf. Com. ex rel. Goldman v. Goldman, 199 Pa. Superior Ct. 274, 184 A. 2d 351 (1962). The doctrine of equitable estoppel stated in brief "is a doctrine of fundamental fairness designed to preclude a party from depriving another of a reasonable expectation when the party inducing the expectation albeit gratuitously knew or should have known that the other would rely upon that conduct to his or her

detriment. . . . Absent any overriding equities in favor of the putative father . . . the law cannot permit a party to renounce even an assumed duty of parentage." Andreas, supra.

The case at bar presents facts different than those presented in Andreas. In Andreas, the putative father did not question the paternity of the child until a support action was brought in 1972 at which time he was advised by the court to take the appropriate legal steps to prove his lack of paternity. Three years passed before the putative father took any action. In the instant action Paul challenged the paternity of Eric as soon as the action for support was brought, and he did so in the appropriate manner.

The Andreas case may also be distinguished in that the putative father admitted an obligation to support the child in a 1971 amicable order for support. Thus, his paternity was a matter of res judicata. Here, no prior court order required Paul to pay support for Eric. Eric was included in a custody and visitation agreement; however, that was by agreement and not order of court. Therefore, there is no res judicata.

Further, in Andreas, the putative father had executed immigration documents stating that the infant would not be a public charge. Thus, he stated to the government that he would support the child. There has been no such assertion by Paul.

In Andreas, the question of paternity arose by way of the putative father's petition to terminate a prior support order. In the instant action, the question of paternity was raised as a defense to an action for support. Although the action was titled as a petition to increase, the petition claimed for the

first time an obligation to support Eric. There is a difference between not allowing one to assert a cause of action and not allowing one to assert a defense.

The most significant fact that distinguishes the present action from Andreas is that Eric's mother admits Paul is not the boy's father. It would be inequitable to allow Marilyn to assert that Paul owes an obligation as the boy's father when she freely admits another fathered the boy.

The doctrine of equitable estoppel requires a balancing of the equities. In Andreas, the balance tipped against the putative father and he was properly barred from asserting the defense of nonpaternity. In the instant action the balance tips the other way. The child was conceived and born while Paul and Marilyn were separated. Paul, from the beginning, denied paternity. The birth certificate was changed as an accommodation. Considering all the equities, Paul must be allowed to assert the nonpaternity defense.

In closing, something must be said of presumptions and the estoppel argument as they relate to paternity. In the past, a child born during a marriage was presumed to be the husband's child. Likewise, once a putative father claimed to be the father of the child, and he assumed the obligation of supporting that child, he would be estopped from denying paternity at a later time. These procedures made sense years ago when an illegitimate child was treated so harshly both by the law and society. While even today there is a preference of legitimacy over illegitimacy, illegitimacy does not have the stigma it once had. Therefore, the possibility that a child may be adjudged illegitimate if the defense of

70

nonpaternity is raised does not tip the balance of equities as far as in favor of the child as it once did.

For the foregoing reasons, the findings of the master are affirmed.

### ORDER

And now, May 8, 1980, the order of the master dated March 14, 1980, requiring Paul Anzulewicz to pay $60 per week to support his sons Steven and Michael is affirmed. Paul Anzulewicz owes no duty to support Eric.