## DeFinis v. DeFinis

*Francis X. Dillon,* for plaintiff.
*Karen Kaskey,* for defendant.

MIMS, *J.,* June 5, 1984—This matter is before the court on father's motion for a protective order to prevent the taking of blood tests in a custody action.

Father and mother were married on February 14, 1976. A son was born on February 24, 1980. Father and mother separated April 1, 1982. The child was two years old at the time of separation and continued to live with father until June, 1982.

Father filed a petition for custody of the child on April 2, 1982. Mother filed a custody petition on April 13, 1982. Both petitions stated that the child was born as a result of the marriage of the parties and that no one else had a claim to visitation or custody of the child.

On June 24, 1982, a temporary agreement between the parties was reached before the custody conference officer which provided for an equal division of physical custody of the child. This agreement is still in effect.

A hearing date on mother's petition for contempt of the agreement was set for August 13, 1982. However, this court was made aware for the first time at a prehearing conference held that day that mother wished to raise the issue of paternity of the child and that she planned to allege that father was not in fact the biological father of the child. Because we did not believe that the courtroom was the proper setting for this type of revelation, we continued the hearing upon the parties' agreement to attend coun-

seling sessions with Court Psychological Services. The hope was that some further agreement as to custody of the child could be reached. Obviously, this did not occur.

Apparently some time in January 1983, mother's attorney suggested to father's attorney that father submit voluntarily to HLA blood testing. Father refused. Mother filed a petition to compel blood testing and an order was entered by this court on February 18, 1984. Father alleged that he had had no prior notice of the petition to compel and he filed a motion for a protective order.

Father's position is that paternity is not a "relevant fact" in this custody action and that mother is estopped from compelling father to submit to a blood test. Mother's position is that paternity is a relevant fact and that the court is authorized to order blood tests in this case.

The Uniform Act on Blood Tests to Determine Paternity, Act of July 9, 1976, P.L. 586, §2, 42 Pa.C.S. §6133, states:

"In any matter subject to this subchapter in which paternity, parentage or identity of a child is a relevant fact, the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity, parentage or identity of a child against such party, or enforce its order if the rights of others and the interest of justice so require." While it may be true, as mother contends, that paternity is a relevant fact in a custody proceeding, we believe that we are bound by pri-

or case law to apply the doctrine of estoppel in this situation.

In Com. ex rel. Goldman v. Goldman, 199 Pa. Super. 274, 184 A.2d 351 (1962), a support action was filed by mother and father petitioned the court for an order requiring blood tests. The issue before the court was whether the Uniform Act on Blood Tests to Determine Paternity, Act of July 13, 1961, P.L. 587, 28 P.S. §307.1 et seq., applied to a support action for a child born during the marriage of the parties. While blood tests were permitted in Goldman, the Superior Court also stated that a husband's right to question paternity was not unlimited and that a husband could be estopped from denying paternity if he had accepted the child and had held the child out as his own.

In Com. ex rel. Weston v. Weston, 201 Pa. Super. 554, 193 A.2d 782 (1963), a support action where the children were born during the marriage and husband did not deny paternity until after the parties' separation, the court held that the doctrine of estoppel applied.

In Com. ex rel. Hall v. Hall, 215 Pa. Super. 24, 257 A.2d 269 (1969), also a support action, the husband was estopped when he had not challenged his paternity prior to separation and he had executed a separation agreement acknowledging the child as his own.

And, in Gonzalez v. Andreas, 245 Pa. Super. 307, 369 A.2d 416 (1976), where husband petitioned to terminate support, the Superior Court held that equitable estoppel applied even where the blood tests had already been taken. Whether the tests had already been taken or not, the issue remained the same: whether the putative father had indicated by his conduct that the child was his own.

While at least one dissent was filed in each of the above cases, the Superior Court, as recently as February 1984, has reaffirmed its position on the applicability of estoppel in support actions. Chrzanowski v. Chrzanowski, 325 Pa. Super. 298, 472 A.2d 1128 (1984), involved a child support modification proceeding under the Revised Uniform Reciprocal Enforcement Support Act and the case dealt with a variety of issues. As to estoppel, Judge Beck stated that the ex-husband would have been precluded from litigating paternity, even if paternity had not already been litigated in Virginia, by his:

". . . long delay in raising the issue at all and by his acceptance and support of the child during that time. See Commonwealth ex rel. Gonzalez v. Andreas, 245 Pa. Super. 307, 369 A.2d 416 (1976); Commonwealth ex rel. Weston v. Weston, 201 Pa. Super. 554, 193 A.2d 782 (1963); Commonwealth ex rel. Goldman v. Goldman, 199 Pa. Super. 274, 184 A.2d 351 (1962). Appellee's *conduct* constitutes an assumption of parental duties toward Marie regardless of whatever verbal representations he may have made to Marie or to others in the course of his social and professional life. This court in the above cases found that parental relationships can be established constructively and that such relationships and their concomitant duties merit judicial recognition and enforcement. The policy behind this rule was best expressed in Gonzalez:

"Absent any overriding equities in favor of the putative father, such as fraud, the law cannot permit a party to renounce even an assumed duty of parentage when by doing so, the innocent child would be victimized. Relying upon the representation of the parental relationship, a child naturally and normally extends his love and affection to the putative parent. The representation of parentage inevitably obscures

the identity and whereabouts of the natural father, so that the child will be denied the love, affection and support of the natural father. As time wears on, the fiction of parentage reduces the likelihood that the child will ever have the opportunity of knowing or receiving the love of his natural father. While the law cannot prohibit the putative father from informing the child of their true relationship, it can prohibit him from employing the sanctions of the law to avoid the obligations which their assumed relationship would otherwise impose." Com. ex rel. Gonzalez v. Andreas, 245 Pa. Super. at 312, 390 A.2d at 419 (1976). (Emphasis in original, footnote omitted.) Id. at 1132.

The Goldman line of cases as described above was applied by the Pennsylvania Supreme Court to an action for involuntary termination of parental rights in In re Adoption of Young, 469 Pa. 141, 364 A.2d 1307 (1976). In Young, mother petitioned for involuntary termination of husband's rights and requested that husband submit to blood tests. The court once again stated that the right to question paternity was not unlimited even where paternity is a relevant fact. The parties were married when the child was born and mother had accepted child support for three years after the couple separated. The court found that had the situation been reversed, if the father had been denying paternity, then he would have been estopped under the circumstances of the case.

We believe that we are bound by these precedents to apply the law as stated above to the case before us. While we recognize our action as being an extension of the doctrine of estoppel from support and involuntary termination actions to custody proceedings, we believe that we are compelled by prior case law and by public policy to make such an extension.

In the instant case, the child was born while the parties were married. The child lived with mother and father until their separation when the child was two years old. The child then lived with father for almost three months until a shared custody agreement, which is still in effect, was reached. The issue of the child's paternity was first raised, as far as we can tell, at a prehearing conference held in August 1982, when the child was almost two and a half years old. Under the circumstances we find that mother is estopped from raising the issue of the child's paternity.

We recognize that the parties here are not in the same position as the parties in the support cases cited above. Here it is mother who is attempting to prove that father is not the biological parent. However, the parties here do stand in the same posture as did the parties in Young, supra, the involuntary termination case. If estoppel would apply to father were he to deny paternity, as we believe it would under the facts presented, then the doctrine must also apply to mother For whatever reason, mother did not raise the issue of paternity until the child was two and a half years old. She did not request that father submit to blood tests until the child was almost three years old. We believe that her actions, along with father's conduct in holding the child out as his own and performing parental duties, estop mother from litigating the issue of paternity now.

There is also a sound public policy reason for our decision. The doctrine of estoppel was originally introduced in support cases to protect the child. Once a person has assumed parental responsibilities, he or she cannot later renege on those responsibilities. In the instant case, mother should not be permitted to deprive this child of a father who has willingly

416

performed his parental duties in the past and who wishes to continue to do so in the future.

For the foregoing reasons we enter the following

ORDER

And now, this June 5, 1984, upon consideration of memoranda of law submitted by both parties pursuant to Bucks County R.C.P. *266, it is hereby ordered that Joseph R. DeFinis' motion for a protective order is granted and our order of February 28, 1984 compelling blood tests is vacated. Susan M. DeFinis is estopped from raising the issue of paternity in further proceedings.