## Dyke v. Dyke

*Marilyn Wollery,* for plaintiff.
*William F. Scarpitti, Jr.,* for defendant.

JOYCE, *J.,* May 8, 1986—This matter comes before the court on defendant's motion for an order directing blood tests wherein defendant, Thomas L. Dyke, requests the court to order blood tests for the purpose of determining that he is not the father of the minor child, Benjamin J. Dyke.

Sandra K. Dyke and Thomas L. Dyke, were married in August, 1973, and three children were born during the marriage; Stacy R. Dyke born June 23, 1974, Matthew T. Dyke, born November 27, 1976, and Benjamin J. Dyke, born October 9, 1979. The parties separated in January 1982 and plaintiff subsequently petitioned for support for the three minor children. As a result of an agreement for an order of support, the Erie County Court of Common Pleas entered a child support order in April, 1982. Defendant has been paying the support as directed via a voluntary wage attachment executed by defendant in November, 1983. Plaintiff petitioned for a

modification of the support order and a support conference was scheduled in November, 1985. At that conference, defendant denied paternity of the youngest child, Benjamin. Less than one month later, defendant filed the motion requesting this court to order the parties to submit to blood tests.

According to a stipulation of facts submitted to the court in lieu of testimony, defendant claims that on November 18, 1985, plaintiff's present husband, Tom Ferriman, advised defendant's father, Bill Dyke, that defendant was not Benjamin's natural father. This information was apparently related to defendant by his father. Defendant further claims that following the support conference of November 19, 1985, plaintiff told him that he was not Benjamin's father and that she was willing to sign a document to that effect. Counsel for defendant prepared an agreement for non-paternity which plaintiff refused to sign. Defendant also states that plaintiff told Benjamin that defendant is not his father on January 3, 1986 and defendant discussed the situation with all of his children the next day.

Based upon the aforementioned stipulation, plaintiff states that when defendant denied paternity of Benjamin at the support conference, she responded: "Ok, if that's what you feel, then sign off your responsibility and don't see him. Have your attorney draw up papers releasing you from responsibility. I am tired of your threats." Plaintiff denies telling her child that defendant is not his father. She alleges that it was defendant who informed the child of his doubts regarding paternity.

Plaintiff refers to a telephone call which she received from defendant's mother in which she was advised that defendant's parents would finance defendant's paternity dispute. Defendant denies that

such a call was placed. Telephone bills attached to the stipulation show that there were calls to plaintiff's home originating from the parents residence on November 9 and November 18, 1985. The nature of the conversations which may have transpired are unknown, cannot be ascertained and are not germane to this court's decision.

Of considerable importance is the time at which defendant chose to deny paternity of the youngest child born of the parties marriage. Defendant asserted non-paternity approximately six years after the birth of the child in question. Conflicting testimony clouds the source of defendant's belief that Benjamin is not his child and defendant offers no explanation for the delay in questioning his parenthood.

The Uniform Act on Blood Tests to Determine Paternity at 42 Pa. C.S. §6131 et seq., which governs any action in which paternity is a relevant factor, is silent as to when a putative father must commence an action to deny paternity. In the absence of a specific statute of limitations, the court may adopt a reasonable time standard. Where the non-existence of the father-child relationship is at issue, the Uniform Parentage Act has embraced such a standard.

"A child, his natural mother, or a man presumed to be his father, . . . , may bring an action . . . for the purpose of declaring the non-existence of the father and child relationship . . . only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than [five] years after the child's birth." Unif. Parentage Act §6(a)(2), 9a U.L.A. 593 (1973).

This provision is applicable where there is a presumption of paternity based on marriage or a relationship similar to marriage. In the interest of protecting the child, the National Conference of

Commissioners on Uniform State Laws sought to limit the time period in which one can dispute paternity where it has been assumed.

Pennsylvania has not adopted the Uniform Parentage Act. However, the courts of this Commonwealth have addressed the right of a reputed father to challenge paternity.

In Goldman v. Goldman, 199 Pa. Super. 274, 184 A.2d 351 (1962) the Superior Court considered an appeal from a lower court order directing the parties to submit to blood grouping tests. Three children were born during the parties marriage. Following separation and the entry of a temporary child support order, appellee denied paternity of the two youngest children. Although in this case, the court permitted the order directing blood grouping tests to stand, the court expressed disapproval of delayed paternity disputes and indicated that the ability of a reputed father to question parenthood may be limited.

"We think that his right to question the paternity is not unlimited. Where the husband has accepted his wife's child and held it out as his own over a period of time, he is estopped from denying paternity." Id. at 283, 184 A.2d at 355.

One year later, any questions regarding the limitations referred to in Goldman, supra, were answered in Commonwealth ex. rel. Weston v. Weston, 201 Pa. Super. 554, 193 A.2d 782 (1963). The appellee denied paternity of children born during his marriage to appellant following their separation. The Superior Court reversed the lower court order directing blood tests holding that appellee was estopped from denying paternity as he had lived with his wife when the children were conceived and accepted them as his own. The conviction with which

the court rendered its opinion is apparent in the following dicta.

"There is something inherently repulsive about a man questioning the paternity of children who were conceived by his wife and born to her while he was living with her and who were accepted and held out to the world by him as his children until his and his wife's personal differences led to a support action." Id. at 556, 193 A.2d at 783.

Relying on the Weston decision, the Superior Court reversed a lower court ruling granting a reputed father's request for blood tests in Commonwealth ex. rel. Hall v. Hall, 215 Pa. Super. 24, 257 A.2d 269 (1969). The child in question was conceived while the parties were married and living together but born after the parties separated. There was a subsequent reconciliation and the final separation did not occur until several years after the birth of the child. A separation agreement executed by the parties contained provisions for both child support and visitation. When the father ceased making support payments pursuant to the agreement, the mother filed an action for support. Defendant denied paternity in his answer alleging the mothers involvement with another man in support of his claim. Appellee failed to challenge paternity for more than two years after the child's birth and acknowledged the child as his own in the separation agreement. Therefore he was estopped from denying paternity.

The Superior Court expanded the application of the doctrine of equitable estoppel in Commonwealth ex. rel. Gonzales v. Andreas, 245 Pa. Super. 307, 369 A.2d 416 (1976). The parties had submitted to blood tests and appellant was excluded as the natural father. Notwithstanding the test results, the

court looked at the putative father's conduct toward the child as dispositive. Because the child was conceived while the parties cohabitated the reputed father married the mother several months after the child was born and recognized the child as his issue, he was estopped from denying paternity. Once again, the court's primary concern was the protection of the child.

"Absent any overriding equities in favor of the putative father, such as fraud, the law cannot permit a party to renounce even an assumed duty of parentage when by doing so, the innocent child would be victimized." Id. at 312, 369 A.2d at 419.

The cases cited wherein a reputed father was unable to deny paternity based upon the doctrine of equitable estoppel apply to this case. Benjamin Dyke was born in 1979 when the parties were married and living together. The first and final separation occurred more than two years after Benjamin was born. Defendant never questioned his parenthood during the marriage, after the separation, at the time a child support order was entered by the Erie County Court of Common Pleas for the benefit of the child, or when he signed a voluntary wage attachment pursuant to the support order. At all times, the father accepted and supported the child as his own. Six years passed before defendant expressed any doubt as to the child's parentage. These factors alone are sufficient for this court to deny defendant's request for blood tests.

Reference has been made to the child support order of April 1982 which was issued by virtue of a consent agreement. Defendant failed to request blood tests at the time of the order and did not appeal the order. In fact, his willingness to support

Benjamin is evidenced by the existing voluntary wage attachment.

It is well established that a child support order determines the issue of paternity and absent an appeal, the doctrine of res judicata precludes a later challenge to paternity. Commonwealth ex. re. Nedzewecky v. Nedzewecky, 203 Pa. Super. 179, 199 A.2d 490 (1964); Commonwealth ex. rel. Palchinski v. Palchinski, 253 Pa. Super. 171, 384 A.2d 1285 (1978). The Nedzewecky court upheld a lower court's refusal to grant blood tests. Defendant's opportunity to challenge paternity was denied because a support order had been established and no appeal was taken. In Palchinski, supra, the Superior Court reversed a lower court ruling which vacated a support order even though subsequent blood tests excluded appellee as the natural father.

The child support order of April 1982 wherein defendant agreed to support his three minor children, including Benjamin is res judicata as to the paternity of the child. For this reason also, defendant's motion is denied.

As a final point, this court finds it particularly repugnant that Benjamin has been informed that defendant has denied paternity. For better than six years this child has known defendant as his father and has likely developed the bonds of affection incident to a parent-child relationship. There is conflicting testimony as to which party told the child that defendant no longer believes that he is the natural father. It is unfortunate that the law cannot prevent a child from receiving such information.

## ORDER

And now, this May 8, 1986, for the reasons set forth in the opinion, it is hereby ordered, directed

and decreed that defendant's motion for an order directing blood tests is hereby denied.