547 A.2d 424

**Charles SEGER, Appellant,**

v.

**Susan R. SEGER.**

Superior Court of Pennsylvania.

Submitted July 11, 1988.

Filed Sept. 8, 1988.

David J. Flowers, Indiana, for appellant.

Wayne A. Kablack, Indiana, for appellee.

Before TAMILIA, MONTGOMERY and HOFFMAN, JJ.

TAMILIA, Judge:

Appellant and appellee were married on September 3, 1977. Prior to the marriage, appellee had been living with appellant for two years when she informed appellant she was pregnant with his child. The child, Jessica Seger, was born on January 16, 1978, with appellant being listed as the natural father on the birth records. When Jessica was approximately four years old, appellee told appellant that Jessica was not his daughter but this contention was not confirmed at that time. Appellant raised and supported Jessica until appellee moved to Florida in November, 1986, taking Jessica with her. Appellant filed a complaint for custody with a hearing on said complaint being held on February 27, 1987, at which time the court heard testimony regarding appellant's status to the child. Temporary custody was awarded to appellant with the court ordering the parties and Jessica to undergo blood tests to determine conclusively whether or not appellant was the child's father. Upon receiving the results of the tests which determined appellant was not Jessica's biological father, the court entered an Order on June 29, 1987 granting custody to appellee with "liberal visitation rights to be agreed upon by the parties" to appellant even though the court found he had no legal right to visit the child. The court granted the visitation because it found appellant and the child had "great affection" for each other. The custody and visitation Order proved to be very unworkable, obviously due to the lack of

specificity as to how the parties should schedule visitation. The result was that appellant had no visits with Jessica from the time of the Order until January 1988 when appellant filed his petition for contempt against appellee for failure to comply with the visitation Order. Appellee apparently thwarted all efforts of appellant to visit with the child and her attitude toward complying with the custody and visitation Order is curtly stated in her brief where, referring to the grant of liberal visitation rights to be agreed upon by the parties, she states, "What the Court meant by this was that Charles Seger would have the right to visit with the child when the mother decided it was appropriate. The Court did not order any specific visitation rights for Charles Seger." Appellee's brief at p. 5.

A hearing on the contempt petition was held on March 7, 1988 with appellant, his counsel and appellee's counsel appearing. Following an in-chambers discussion with both attorneys, and without taking any testimony, the Court vacated its June 29, 1987 Order which awarded liberal visitation to appellant and entered a new Order finding appellant "has no legal standing to visit with the child in view of the fact that he is not the biological father of said child." Appellant appeals from this Order.

■ Before we address appellant's issues, we will discuss appellee's contention that no issues have been properly preserved for our review. Appellee claims appellant was required to file exceptions to the court's Order or raise the issues he raises on appeal to the trial court first, otherwise, he waives those issues. Appellee's argument is wrong; the concept of waiver is inappropriate in a child custody/visitation case. *In re Custody of Frank*, 283 Pa.Super. 229, 423 A.2d 1229 (1980). The purpose of a custody hearing is to determine the best interests of the child. We cannot allow the procedural aspects of custody matters to take precedence over the welfare of the child, therefore, a custody Order is a final, appealable Order, reviewable by this Court without any intervening procedures, such as exceptions, being necessary. *Id.* The scope of review of an appellate

court in a custody case is of the broadest type. It is limited only to the extent that an appellate court may not nullify the fact finding function of the hearing judge. *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984). Thus, appellant's appeal to this Court is entirely proper.

■ The first issue raised by appellant is whether the trial court had the authority to modify the June 29, 1987 custody/visitation Order without a petition for modification and testimony supporting "changed circumstances." In a recent decision by this Court, we stated the appropriate way for a custody/visitation Order to be modified is through a petition for modification. *Steele v. Steele,* 376 Pa.Super. 174, 545 A.2d 376 (1988). A trial court cannot permanently modify a visitation Order without the petition to modify being submitted by one of the parties. *Id.* Thus, on that basis alone, the trial court Order of March 8, 1988 must be vacated and the June 29, 1987 Order reinstated until a new Order is entered consistent with our determination of appellant's second issue.[1]

■ Appellant next alleges trial court error in denying him partial custody and/or visitation rights, notwithstanding the fact he is not the child's biological father. The reasoning of the court was as follows:

The Court prevailed on the attorneys for both sides to permit the visitation even though Charles Seger had no legal right to visit with the child because of the past relationship of the child with him (the child believing even to this date that Charles Seger was her biological father).

·    ·    ·    ·    ·

1. In *Karis v. Karis,* 518 Pa. 601, 544 A.2d 1328 (1988), the Supreme Court eliminated the requirement that a petition for modification of an existing court Order must allege a substantial change of circumstance. The requirement established by the Supreme Court is that the petition must simply allege it is in the best interest of the child to warrant review. The requirement that a petition for modification be filed in order for the court to review the case for permanent modification of a custody Order, and to enter a final Order, remains intact.

The Court hereby vacates its Order of June 29 awarding Charles Seger liberal visitation rights due to the fact that he has no legal standing to visit with the child Jessica, it having been shown by the blood test that he is not the biological father of the said child. The Court's Order of June 29 was an effort by the Court to preserve the relationship which has no legal standing. Therefore, said Order is hereby vacated and jurisdiction of this case is relinquished in view of the fact that the child and the biological mother of said child presently reside in Florida.

(Slip Op., Earley, P.J., 3/8/88, p. 2–3.)

This is the reverse of the usual case where a mother is attempting to *establish* paternity to obtain child support. In those situations we have not allowed the putative father to show through blood tests that he is not the natural father if paternity has otherwise been conclusively established in accordance with the law. The rationale used in such cases is applicable to this case. In *Matter of Montenegro*, 365 Pa.Super. 98, 528 A.2d 1381 (1987), the father married the mother subsequent to the child's birth although the father was named on the birth certificate and the child took his name. The parents had another child born during the marriage and all four lived as a family. Only upon separation five years after marriage did the father question paternity. He was successful in obtaining an Order relieving him of support (unappealed from), but in petitioning to have his name removed from the child's birth certificate, we found the father could not present evidence from the blood tests since, according to statute, 48 P.S. § 167,[2] he was the father of the child.

**2.** § 167. Children; legitimacy; determination of paternity

. . . . .

(b) For purposes of prescribing benefits to children born out of wedlock by, from and through the father, paternity shall be determined by any one of the following ways:

. . . . .

(2) If during the lifetime of the child, the father openly holds out the child to be his and receives the child into his home, or openly holds the child out to be his and provides support for the child which shall be determined by clear and convincing evidence.

The appellant and appellee were married at the time of Jessica's birth; therefore, the presumption is she is appellant's daughter. Under the facts of this case, appellant could not introduce the blood tests to *disprove* paternity and neither should appellee be able to do so since the law presumes appellant is the child's father. It has been stated in numerous cases that a father is estopped from denying paternity by long delay in raising the issue at all (assuming he was aware of non-paternity) and by his acceptance and support of the child during that time. *See Commonwealth ex rel. Gonzalez v. Andreas,* 245 Pa.Super. 367, 369 A.2d 416 (1979); *Commonwealth ex rel. Weston v. Weston,* 201 Pa.Super. 554, 193 A.2d 782 (1963); *Commonwealth ex rel. Goldman v. Goldman,* 199 Pa.Super. 274, 184 A.2d 351 (1962). If a father's conduct works an estoppel on his assertion of non-paternity in a support matter, there is no principle in law which would prevent the same application to a case, such as here, where the mother informs the father he is responsible for the pregnancy, marries him, assigns paternity to him on the birth certificate, permits him to support the child and assume the parental duties for years, and only upon separation repudiates his paternity. Under these circumstances, permitting a blood test was improper and denying visitation rights is impermissible. *Also see Chrzanowski v. Chrzanowski,* 325 Pa.Super. 298, 472 A.2d 1128 (1984).

█ We also believe the trial court erred in this decision since a biological relationship between the child and the adult seeking custody and/or visitation is not the only basis on which we have granted such petitions. In fact, we have approved visitation between children and adults who have had a less substantial relationship than appellant and Jessica have. In *Burke v. Pope,* 366 Pa.Super. 488, 531 A.2d 782 (1987), the biological mother and an unrelated third party were involved in a custody dispute where the mother and her three children had lived with the third party, Dr. Marie Theresa Burke, for over two years. Although the procedural and factual history is extensive, suffice it to say we

allowed Dr. Burke visitation with the childen despite the fact she is a non-parent, totally unrelated to the children. In light of her interest in and support of the children and the fact that "bonding" had occurred between them, we found a reasonable grant of visitation was appropriate. The ultimate basis of our decision was, as it always must be, the best interests of the children. *Michael T.L. v. Marilyn J.L.*, 363 Pa.Super. 42, 525 A.2d 414 (1987). Therefore, circumstances sometimes require a non-parent to have custody and/or visitation with a child because to abruptly cut off and destroy the relationship would be detrimental to the child's welfare.

We would find this to be true in this case even if we had not found that paternity was unassailable. Appellant has raised Jessica as his own daughter for the entire ten years of her life. For at least the first four years, he had no knowledge of the fact she was not his daughter. This situation is distinguishable from, but has many similarities to, the typical parent-stepparent case where the stepparent, knowing the child is not his biologically, becomes a focal point of the child's life at some stage, usually after the child is an infant, and after a break-up of the marriage seeks custody/visitation rights. Because we recognize a stepparent may have established a loving relationship with a child, we have refused to destroy that relationship by denying custody and/or visitation even though the marriage between the natural parent and stepparent may have ended. It is not a requirement of such marital break-ups that the relationship between the child and stepparent immediately ceases with total disregard for the wishes of the stepparent and the welfare of the child.

The first comprehensive Opinion dealing with this issue was rendered by this Court in *Spells v. Spells*, 250 Pa.Super. 168, 378 A.2d 879 (1977), which remains the authority on stepparent rights concerning child custody/visitation.

It is our belief that a stepfather may not be denied the right to visit his stepchildren merely because of his lack of a blood relationship to them. Clearly, a stepfather and his young stepchildren who live in a family environment

may develop deep and lasting mutual bonds of affection. Courts must acknowledge the fact that a stepfather (or stepmother) may be the only parent that the child has truly known and loved during its minority. A stepparent may be as devoted and concerned about the welfare of a stepchild as a natural parent would be. Rejection of visitation privileges cannot be grounded in the mere status as a stepparent.

Pennsylvania courts recognize that a person may "put himself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. This status, [known as 'in loco parentis'] embodies two ideas; first, the assumption of a parental status, and second, the discharge of parental duties." *Commonwealth ex rel. Morgan v. Smith*, 429 Pa. 561, 565, 241 A.2d 531, 533 (1968).

.    .    .    .    .

A stepfather who lives with his spouse and her natural children may assume the status 'in loco parentis'. We may expect that a bond will develop between stepparent and stepchild; we, therefore, should protect that relationship by conferring rights of visitation.

*Id.*, 250 Pa.Superior Ct. at 172, 378 A.2d at 881–882.

We must decide the rights of the parties in relation to the best interest and welfare of the child. Appellant, although he may not be the natural father, has assumed the role of father, first by belief, then, after knowledge he was not the father, by intent and interaction with Jessica. He raised her as a daughter and she believes he is her father. Certainly, it is in her best interest that their relationship not be abruptly cut off by the fact they have no biological relationship to each other. Therefore, we find partial custody and visitation to be appropriate.

We reverse and remand to the trial court for entry of an Order consistent with this Memorandum.

Jurisdiction relinquished.

MONTGOMERY, J., concurs in the result.