558 A.2d 556

**Ernestine Walker SANDERS**

v.

**Mike SANDERS, Jr., Appellant (Two Cases).**

Superior Court of Pennsylvania.

Argued Jan. 20, 1989.

Filed May 3, 1989.

William Goldstein, Philadelphia, for appellant.

Allen N. Abrams, Philadelphia, for appellee.

Before CIRILLO, President Judge, and BECK and TAMILIA, JJ.

CIRILLO, President Judge:

This is a consolidated appeal from two orders entered in the Court of Common Pleas of Philadelphia County. The parties, appellee Ernestine Walker Sanders ("Mrs. Sanders") and appellant Mike Sanders, Jr., ("Sanders") were married in 1972 and divorced in 1980. Previously, Mrs. Sanders had been married to Mr. James Walker ("Walker"). During her marriage to Walker, two children were born, Sheila and Steven. This dispute involves the paternity and support of Steven. Steven's birth certificate identifies his mother as Ernestine Walker, appellee here, and his father as James Walker.

When appellee and Walker separated, appellee filed a complaint for support against Walker. On April 4, 1972, an order was entered in the Court of Common Pleas, Family Court Division, D.R. # 256613, requiring Walker to pay $18.00 a week for each of his two children, Sheila and Steven. In September of 1981, the order as to Sheila was vacated as of July 6, 1981, the date of her eighteenth birthday, and the order as to Steven was increased to $25.00 per week. This amendment was agreed upon by the parties and reduced to a formal court order and entered on September 4, 1981, D.R. # 256613. No appeal was taken.

In April of 1979, Mrs. Sanders filed a complaint for support against Sanders on behalf of Steven and also on behalf of Celeste, a daughter born during her marriage to Sanders. In February of 1982 the parties entered into a settlement agreement, which was approved by the court. In that agreement, Sanders was required to pay $83.00 per week for child support. The agreement stated that Steven and Celeste Sanders were the "minor children of Mike Sanders, Jr. and Ernestine Walker Sanders." The parties entered into a stipulation which provided that Mrs. Sanders would not "initiate or file any action in any court to increase

support for their children, Steven and Celeste[.]" Thereafter, in August of 1985, Mrs. Sanders filed a complaint for support. The hearing officer proposed that support be increased from $83.00 per week to $160.00 per week. As a result of testimony from that hearing, it was determined that Mrs. Sanders was already receiving $100.00 per month in voluntary support for the minor child Steven from Walker, her first husband. Notwithstanding the consensual support order between Mrs. Sanders and Walker, Mrs. Sanders maintained that appellant Sanders is Steven's natural father.

Sanders filed exceptions to the proposed support order. These exceptions were granted, and the case was remanded for specific findings of fact and conclusions of law as to appellant's obligation to support Steven. At that hearing, Mrs. Sanders testified that Steven was born during her marriage to Walker, and that Walker was identified as the father on Steven's birth certificate. Despite this, she maintained that Sanders was the natural father of Steven. The court ordered the parties to submit to blood tests, after which the matter was to be re-listed to resolve the issue of paternity.

Sanders took exception to the court's order, arguing that the court was without jurisdiction to order blood tests since a previous agreement for an order of support between Mrs. Sanders and Walker had already established the paternity of Steven. These exceptions were denied, and Sanders was ordered to pay $160.00 per week for both children. The order was dated March 12, 1987. On April 7, 1987, this order was vacated pending adjudication of Sanders' motion for reconsideration. On May 13, 1987, the order was amended, reinstating the original temporary order of $83.00 per week. On December 2, 1987, the trial court entered the following order for support:

> The Court finds that the Order of March 12, 1987 was entered in error since the proposed order of $160.00 per week was no longer in existence after the remand. Wherefore, the defendant's Motion to Reconsider is

Granted, and the Order of March 12, 1987 is hereby Vacated.

The temporary order of October 23, 1985 requiring the defendant to pay $83.00 per week is continued. Further, Ernestine Walker Sanders, Mike Sanders, Jr. and the child, Steven, are to submit to H.L.A. blood studies. Re-list before Judge Levin upon completion of tests. This Court will reserve decision on the issue of the Court's right to determine paternity because of the prior adjudication in the James Walker case.

Sanders did not appear for the blood tests and filed an appeal on December 23, 1987 from the temporary support order of December 2, 1987. On March 22, 1988, the court found him in contempt. Two days later Sanders filed an appeal from the order holding him in contempt. Pursuant to the parties' stipulation, the appeals were consolidated.

Sanders raises one issue for our review: Does the entry of an order for support of a child from which no appeal was taken necessarily determine the issue of paternity and therefore bar further reconsideration of that issue at a later date? The order to which appellant refers is the consensual support order between Mrs. Sanders and Walker, from which Walker never appealed. Sanders argues that this order established Walker as the father of Steven, that since no appeal was ever taken from that order the parties are precluded from relitigating the paternity issue, and that therefore the support order and the contempt order should be vacated.

■ We note initially that the December 2 order is a hybrid order, containing both an order for support and an order directing Sanders to submit to blood testing. That part of the order pertaining to support is a temporary order, not a final order. The appeal, therefore, is premature and must be quashed. *DeWald v. Pauline*, 312 Pa.Super. 391, 458 A.2d 1016 (1983) (final order is one which ends litigation, or alternatively, disposes of the entire case; an order is interlocutory and not final and appealable unless it effectively puts the defendant "out of court"); *Nixon v. Nixon*,

312 Pa.Super. 313, 458 A.2d 976 (1983) (where no final order of support exists, the order is interlocutory and unappealable).

With respect to that part of the order requiring Sanders to submit to blood testing, we find the appeal therefrom is properly before us. *See Commonwealth ex rel. Coburn v. Coburn*, 384 Pa.Super. 295, 558 A.2d 548 (1989); *Chrzanowski v. Chrzanowski*, 325 Pa.Super. 298, 303 n. 3, 472 A.2d 1128, 1130 n. 3 (1984); *see also Commonwealth ex rel. Weston v. Weston*, 201 Pa.Super. 554, 193 A.2d 782 (1963) (an appeal may be maintained from an order directing a blood test to determine paternity entered in a support action, and such appeal is not subject to dismissal on the theory that the order is interlocutory).[1] Sanders argues that the court's order requiring him to undergo H.L.A. blood testing is improper because the issue of paternity is settled. Sanders argues that the case of *R.J.K. v. B.L.*, 279 Pa.Super. 71, 420 A.2d 749 (1980), is controlling.

In *R.J.K.*, the parties lived together at various times between 1972 and 1977. During this time, two children were born. The parties were separated, although appellee/mother continued to see her husband, the appellant, on an irregular basis. She also persuaded appellant to sign a support agreement for one of her children, and later, to agree to an increase in the support to include her second child. Both consensual support orders were approved by the court. No appeal was taken from either order. Appellant failed to comply with the support order, and appellee filed a rule to show cause why the appellant should not be held in contempt. In response, appellant filed a petition to strike the support order. The petition was denied, and appellant was found in contempt. He appealed, and this court affirmed, reiterating the well-settled rule that entry of a court order for support of a child, from which no appeal is taken, necessarily determines the issue of paternity. *Id.*,

1. We note that the appeal from the March 22 contempt order, docketed at 01029 Philadelphia, 1988, is interlocutory. *See Hester v. Bagnato,* 292 Pa.Super. 322, 437 A.2d 66 (1981) (unless sanctions are imposed, an order declaring a party in contempt is interlocutory).

279 Pa.Superior Ct. at 73–74, 420 A.2d at 750. Absent an appeal, the doctrine of res judicata "operates to foreclose any subsequent challenge on the issue of paternity." *Id.*, 279 Pa.Superior Ct. at 74, 420 A.2d at 751, *citing Commonwealth ex rel. Nedzwecky v. Nedzwecky*, 203 Pa.Super. 179, 199 A.2d 490 (1964). *See also Wachter v. Ascero*, 379 Pa.Super. 618, 621, 550 A.2d 1019, 1020 (1988) (absent an appeal taken directly from the order of support, or the showing of fraud in relation to that order, the aggrieved party is foreclosed from challenging the paternity of the child; the issue of paternity is established as a matter of law); *Shindel v. Leedom*, 350 Pa.Super. 274, 278, 504 A.2d 353, 355 (1986); *Commonwealth ex rel. Palchinski v. Palchinski*, 253 Pa.Super. 171, 174, 384 A.2d 1285, 1287 (1978).

■ An examination of the case law reveals that in the cases applying the doctrine of res judicata for the purpose of precluding relitigation of the paternity issue, the party appealing or contesting his paternity was the same party who was previously ordered to pay support, or who had previously entered into a consensual order of support. In order for the doctrine to apply, there must be a coalescence of (1) identity of cause of action; (2) identity of persons to the action; (3) identity of the quality or capacity of the parties; and (4) identity of the thing sued upon. *Gardner v. Gardner*, 371 Pa.Super. 256, 261, 538 A.2d 4, 7 (1988); *Brandschain v. Lieberman*, 320 Pa.Super. 10, 466 A.2d 1035 (1983). In the cases we have reviewed, there existed an identity of the parties to both causes of action. *See, e.g., Wachter v. Ascero*, 379 Pa.Super. 618, 550 A.2d 1019 (filed Dec. 1, 1988); *Schultz v. Connelly*, 378 Pa.Super. 98, 548 A.2d 294 (1988); *Gardner v. Gardner*, 371 Pa.Super. 256, 538 A.2d 4 (1988); *Barclay v. Barclay*, 367 Pa.Super. 529, 533 A.2d 143 (1987); *Manze v. Manze*, 362 Pa.Super. 153, 523 A.2d 821 (1987); *Shindel v. Leedom*, 350 Pa.Super. 274, 504 A.2d 353 (1986); *Chrzanowski v. Chrzanowski*, 325 Pa.Super. 298, 472 A.2d 1128 (1984); *R.J.K. v. B.L.*, 279 Pa.Super. 71, 420 A.2d 749 (1980); *Armstead v. Dandridge*, 257 Pa.Super. 415, 390 A.2d 1305 (1978); *Commonwealth*

*ex rel. Palchinski v. Palchinski,* 253 Pa.Super. 171, 384 A.2d 1285 (1978). Unlike the usual case, in which the putative father against whom a consensual order or court order has already been entered later contests his paternity, here we have the rare case where two men are paying support for the same child,[2] and both men have apparently acknowledged the child as their son during the time when they were married to Mrs. Sanders, respectively. Sanders relies upon the support order against Walker to show that Walker's paternity has been established as a matter of law, thus barring relitigation of the paternity issue.

Hypothetically, if *Walker* were to contest his paternity, the support order entered against him from which no appeal was taken would bar reconsideration on his behalf. *R.J.K., supra.* However, the situation before us is novel. We must decide whether a putative father, against whom a temporary support order has been entered, can rely upon a determination of paternity resulting from the presumptive father's failure to appeal a support order entered against him, in order to preclude relitigation of the paternity issue.

The trial court concluded that Mr. Sanders could not rely upon a support order entered against another man to prevent the court from determining who the natural father of the child is. The court stated: "We find that this argument cannot prevail where, as here, the defendant is attempting to use *R.J.K.* to preclude the court from finding out who the real father is. Moreover, [Sanders] cannot refuse to take the blood test simply because Walker had entered into an agreement to support Steven; especially since [Sanders] had also agreed to support him on two separate occasions." We disagree.

Relitigation of the paternity issue is barred under the doctrine of collateral estoppel. "The doctrine of collateral estoppel is a broader concept than res judicata. It operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of

---

2. We note that both orders are entered in the Court of Common Pleas, Family Court Division.

competent jurisdiction from being relitigated in a subsequent suit." *Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa.Super. 225, 236, 464 A.2d 1313, 1318 (1983). *See Norris v. Beck,* 282 Pa.Super. 420, 422 A.2d 1363 (1980) (paternity is necessarily adjudicated in entering the initial support order); *see also Zampetti v. Cavanaugh,* 406 Pa. 259, 265, 176 A.2d 906, 909 (1962) ("a consent decree ... binds the parties with the same force and effect as if a final decree had been rendered after a full hearing on the merits.")

> Unlike res judicata, there is no requirement that there be an identity of parties between the two actions to invoke the bar. "Parties to a subsequent action need not be the same as those in the prior suit in order to raise the question of collateral estoppel. Collateral estoppel may be used as either 'a sword or a shield' by a stranger to the [prior] action, as long as the party against whom the defense is invoked is the same." [citations omitted]

*Day,* 318 Pa.Super. at 236–37, 464 A.2d at 1319.

A plea of collateral estoppel is valid if: (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. *In re Estate of R.L.L.,* 487 Pa. 223, 228 n. 8, 409 A.2d 321, 323 n. 8 (1979).

We find that Mrs. Sanders, who filed a complaint for support against Sanders after a consent order had already been entered against Walker for support of the same child, is collaterally estopped from raising the issue of paternity and seeking support from Sanders. All of the elements for a valid claim of collateral estoppel exist here: the issue of paternity was adjudicated by entry of the initial order against the presumptive father, Walker, *Norris v. Beck, supra;* the consent order between Mrs. Sanders and Walker was a final judgment on the issue of paternity, binding the

parties with the same force and effect as if there had been a full hearing on the merits and a final decree rendered, *Zampetti v. Cavanaugh, supra;* the party against whom the "shield" is asserted, Mrs. Sanders, was a party to the prior adjudication (the consent order between Mrs. Sanders, then Mrs. Walker, and James Walker); and, the party against whom collateral estoppel is asserted, Mrs. Sanders, has had a full and fair opportunity to litigate the issue in question in a prior action. Mrs. Sanders had the opportunity, as well as the knowledge, to fully and fairly litigate the issue of the child's paternity during the proceedings with Walker. However, at that time she chose not to do so. Mrs. Sanders later filed for support from appellant Sanders. For some time, then, Mrs. Sanders received support from two sources for the same child. Although Mrs. Sanders stated that she had informed Walker, her husband at the time Steven was born, of his non-paternity, she nonetheless assigned paternity to him on the birth records, permitted him to support the child and assume parental duties, and, after separation, she sought and received support payments on behalf of Steven from him. Mrs. Sanders is therefore estopped from seeking support for the same child from another source.

■ Although it is certainly possible that Sanders is the child's biological father, once paternity in Walker had been determined as a matter of law, paternity was no longer a relevant fact. A mother simply cannot attempt to establish paternity in someone after paternity has already been established under the law; she cannot seek and receive child support from two men for the same child. This is a legal impossibility. *See Commonwealth ex rel. Coburn v. Coburn, supra* (paternity is only a "relevant fact" when paternity has not been established either by consent or order in a prior proceeding); *Manze v. Manze,* 362 Pa.Super. 153, 162, 523 A.2d 821, 825 (1987) (where paternity has been established either by consent or order, paternity is not

a relevant fact in a later proceeding).[3] This court has previously held that a father is estopped from denying paternity by long delay in raising the issue at all (assuming he was aware of non-paternity) and by his acceptance and support of the child during that time. *Commonwealth ex rel. Gonzalez v. Andreas*, 245 Pa.Super. 307, 369 A.2d 416 (1976); *Commonwealth ex rel. Weston v. Weston*, 201 Pa.Super. 554, 193 A.2d 782 (1963); *Commonwealth ex rel. Goldman v. Goldman*, 199 Pa.Super. 274, 184 A.2d 351 (1962). More recently, in *Seger v. Seger*, 377 Pa.Super. 391, 547 A.2d 424 (1988), we stated:

> If a father's conduct works an estoppel on his assertion of non-paternity in a support matter, there is no principle

**3.** The Uniform Act on Blood Tests to Determine Paternity, 42 Pa.C.S. §§ 6131 *et seq.*, provides that where paternity is a relevant fact, the court, upon its own initiative, may order the mother, child, and alleged father to submit to blood tests. 42 Pa.C.S. § 6133. This section applies to all civil matters and certain criminal matters. 42 Pa.C.S. § 6132. However, our cases have limited the trial court's authority to order testing. Paternity is *not* a relevant fact, and hence testing cannot be ordered, when paternity has already been established by consent or order in a prior proceeding. *Wachter v. Ascero, supra; Manze v. Manze, supra.*

However, we recognize that potential situations exist where a request for court ordered blood testing would be made on behalf of a child in order to determine the biological father for purposes other than custody, support, or visitation. Today's advanced medical technology links many diseases and health problems to genetics. Various genetic diseases, such as Tay–Sachs, sickle cell anemia, and heart disease, to name a few, could be detected and treated or cured if the child's parent or guardian were aware of the potential for such diseases. The potential for contraction of such a disease might alter the individual's lifestyle and impact upon life decisions. In this situation, paternity is a relevant fact in an action distinct from the traditional custody, support and visitation actions, and good cause exists for court ordered blood testing. *See* Pa.R.C.P. 4010(a); *see also John M. v. Paula T.*, 377 Pa.Super. 72, 80, 546 A.2d 1162, 1167 (1988) (the "good cause" requirement of Rule 4010(a) is "a limitation upon the right to compel a litigant to submit to the [blood] test[,] ... [and] entails more than mere relevancy.")

Our law must keep pace with medical technology. We must recognize these potential situations and, when presented with such, allow blood testing even though it may damage family integrity. Otherwise, we might neglect our primary duty to consider the child's best interests. *See Commonwealth ex rel. Coburn v. Coburn*, 384 Pa.Super. 295, 305, 558 A.2d 548, 553 (en banc) (1989) (Cirillo, P.J., concurring).

in law which would prevent the same application to a case, such as here, where the mother informs the father he is responsible for the pregnancy, marries him, assigns paternity to him on the birth certificate, permits him to support the child for years, and [later] repudiates his paternity. Under these circumstances, permitting a blood test was improper and denying visitation rights is impermissible.

*Id.*, 377 Pa.Superior Ct. at 397, 547 A.2d at 427. In *Seger*, appellant/father and appellee/mother were married on September 3, 1977. A daughter, Jessica, was born during the marriage. Appellant was named as the father on the birth records. When Jessica was four years old, the mother told appellant that Jessica was not his daughter. Appellant continued to raise and support Jessica until the mother moved to Florida in 1986, taking Jessica with her. *Id.*, 377 Pa.Superior Ct. at 393–94, 547 A.2d at 425.

Appellant then filed a complaint for custody of Jessica. Following a hearing on the complaint, temporary custody was awarded to appellant, with the court ordering the parties and Jessica to undergo blood tests. The results of the tests indicated that appellant was not Jessica's biological father. Thereafter, the court granted custody of the child to the mother, with "liberal visitation rights to be agreed upon by the parties" to appellant, even though the court found appellant had no legal right to visit the child. The order, however, proved unworkable, and appellant filed a petition for contempt against appellee for failure to comply with the visitation order. Following a hearing on the contempt petition, the court vacated its order and entered a new order finding appellant had "no legal standing to visit with the child in view of the fact that he is not the biological father of said child." *Id.* Appellant appealed this order.

Appellant claimed the court erred in denying him partial custody and visitation, notwithstanding the fact he was not the biological father. We held that, under the facts of the case, since appellant could not have introduced blood tests to *disprove* paternity, "neither should appellee be able to do

so since the law presumes appellant is the child's father."
*Id.*, 377 Pa.Superior Ct. at 397, 547 A.2d at 427.

Although the facts of *Seger* differ from those in the case before us, we conclude that the underlying rationale of *Seger* is equally applicable to the circumstances in this case. We hold therefore, that Mrs. Sanders is estopped from denying the presumptive father's paternity, and find that the trial court erred in ordering the parties to undergo blood tests. *Cf. John M. v. Paula T.*, 377 Pa.Super. 72, 546 A.2d 1162 (1988) (putative father has standing to litigate a claim that he is the biological father of a child born to a woman while she was married to another, who is presumed to be the child's father).

Appeal from temporary order of support is quashed; order finding appellant in contempt is vacated and the case is remanded for proceedings consistent with this opinion.[4] Jurisdiction is relinquished.

---

[4.] We note that our disposition of this issue does not affect the temporary order of support entered against Sanders on behalf of the parties' daughter, Celeste.