J-A04042-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| GARRETT FULLER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JENNIFER FULLER | : | |
| | : | |
| Appellant | : | No. 1188 MDA 2025 |

Appeal from the Order Entered August 18, 2025
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2023-03495

BEFORE:  PANELLA, P.J.E., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: APRIL 22, 2026**

Jennifer Fuller ("Mother") appeals from the order which granted the petition for special relief filed by Garrett Fuller ("Father"), and directed, *inter alia*, that the parties' minor son, G.F., born in 2019 ("Child"), attend kindergarten at Mountain Top Christian Academy ("the Academy") for the 2025-2026 school year.  We affirm.

The trial court summarized the relevant factual and procedural history of this matter as follows:

> This action began [in] 2023, with [Father] filing a complaint in divorce including a count for custody seeking shared legal and shared physical custody of the minor Child.  Regarding the custody count, the parties were able to reach a stipulation . . . which provided them with shared legal custody and shared physical custody.  The parties' stipulation was adopted by court order . . . .
>
> [I]n June . . . 2024, [Mother] filed a petition for special relief requesting a hearing . . . regarding whether the Child should attend kindergarten for the 2024-2025 school year, and if so, which school the Child should attend.  [Father] filed a counter-

petition for special relief, requesting that the Child be enrolled for another year in prekindergarten at the . . . Academy. A full hearing was held . . . after which an order was issued . . . that directed that the Child attend an additional year of prekindergarten at the . . . Academy[,] and ordered that [Father] be solely responsible for the Child's 2024-2025 tuition. No determination was made by the court regarding where the Child would attend school beyond the second year of prekindergarten.

[I]n April . . . 2025, [Father] filed a petition for special relief requesting that the Child attend kindergarten, and subsequent years, at the . . . Academy, and that [Father] continue to be solely responsible for the Child's tuition and school uniform costs. A hearing was held on [Father's] petition on July 7, 2025. The court notes that [Mother] did not file any petition seeking that the Child attend kindergarten or subsequent school years at any other school district[,] but rather made an oral request during her testimony for the Child to attend the Dallas Elementary School District for kindergarten at the time of the hearing. An order was issued on July 10, 2025, that directed that the minor child attend kindergarten at the . . . Academy for the 2025-2026 school year, and that [Father] be responsible for the 2025-2026 tuition. [Mother] filed a [timely] motion for reconsideration . . .. [On Monday, August 11, 2025, the trial court entered an order wherein it expressly granted reconsideration and] scheduled a hearing regarding [Mother's] motion, which was held on August 12, 2025. [On] August 1[8], 2025, . . . th[e trial] court [entered an order which] denied and dismissed [Mother's] motion for reconsideration, and reaffirmed its order of July 10, 2025.

Trial Court Opinion, 9/9/25, at 1-2 (unnecessary capitalization omitted, some

capitalization added). Mother filed a timely notice of appeal,[1] along with a

_____

[1] In order to toll the time for taking an appeal, a trial court must expressly grant reconsideration within the time allowed for filing an appeal. **See Cheathem v. Temple University Hosp.**, 743 A.2d 518 (Pa. Super. 1999); **see also** Pa.R.A.P. 903(a) (providing that the notice of appeal shall be filed within thirty days after the entry of the order from which the appeal is taken). Here, the trial court confirmed that its August 11, 2025 order scheduling a hearing on Mother's motion for reconsideration was an order expressly

*(Footnote Continued Next Page)*

contemporaneous concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), and the trial court thereafter authored an opinion pursuant to Rule 1925(a)(2)(ii).

Mother raises the following issues for our review:

1. Was it error for the trial [court] to limit testimony and admission of evidence at the July 7, 2025 hearing?

2. Was it error for the trial [court] to fail to give due consideration to the fact that the . . . Academy is a private, religious school, the mission of which is to train its students in the Bible, while Mother is not religious?

3. Was it error for the trial [court] to decide that the minor Child attend kindergarten at the . . . Academy (which is in the Crestwood School District) rather than the Dallas School District because that decision was not in the best interest of the minor Child?

Mother's Brief at 4 (unnecessary capitalization omitted).

We review Mother's issues on appeal, which pertain to the trial court's order in this custody matter, according to the following standard and scope of review:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable,

_____

granting reconsideration. ***See*** N.T., 8/12/25, at 2-3. Where a timely order granting reconsideration is entered, the time for filing a notice of appeal begins to run anew after the entry of the decision on reconsideration, whether or not that decision amounts to a reaffirmation of the prior determination of the trial court. ***See*** Pa.R.A.P. 1701(b)(3). Thus, Mother properly and timely appealed from the August 18, 2025 order denying her motion for reconsideration and reaffirming the July 10, 2025 order.

or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa. Super. 2023) (cleaned up).

It is not this Court's function "to determine whether the trial court reached the 'right' decision; rather, we must consider whether, based on the evidence presented, given due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion." *King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) (cleaned up). Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough. *See R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009).

Child custody actions are governed by the Child Custody Act, 23 Pa.C.S.A. §§ 5321-5340. In all custody matters, the paramount concern is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral, and spiritual well-being. *See Landis v. Landis*, 869 A.2d 1003, 1011 (Pa. Super. 2005). When

awarding any form of custody, the trial court is required to consider the child's best interests pursuant to the sixteen custody factors set forth in section 5328(a). *See* 23 Pa.C.S.A. § 5328(a).

However, not every decision by a trial court in a custody case entails an award of a form of custody requiring consideration of the sixteen custody factors. *See M.O. v. J.T.R.*, 85 A.3d 1058 (Pa. Super. 2014) (holding that the trial court was not required to address the section 5328(a) custody factors where it decided a "discrete and narrow issue ancillary to a materially unchallenged custody arrangement"). Where the trial court does not make an award of custody, but merely modifies a discrete and narrow issue which is ancillary to custody (*i.e.*, to change the custody exchange location or to decide whether a child plays sports in one parent's municipality or the other's), it is not bound to address the sixteen custody factors in determining the child's best interest. *See id*. at 1063. Nevertheless, pursuant to section 5338(a) (concerning modification of a custody order), the trial court is still required to ensure that the modification is in the child's best interest. *See id*.; *see also* 23 Pa.C.S.A. § 5338(a) (providing that "[u]pon petition, a court may modify a custody order to serve the best interest of the child").

In her first issue, Mother purports to challenge one of the trial court's evidentiary rulings. Specifically, she challenges the trial court's decision to limit the scope of the testimony provided at the July 7, 2025 hearing to new information. Mother claims that the trial court should have expanded the

scope of evidence presented at the hearing, and it should have conducted an *in camera* interview of Child, who was present at the hearing.

Preliminarily, we must determine whether Mother preserved this issue for our review. In order to preserve an issue for appellate review, a party must promptly bring the issue to the trial court's attention. **See Hong v. Pelagatti**, 765 A.2d 1117, 1123 (Pa. Super. 2000). On appeal, this Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. **See id**.; **see also** Pa.R.A.P. 302(a) (providing that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Here, trial court considered Mother's first issue and determined that it was waived. The court reasoned:

> By way of background, the court had a previous hearing with the parties on August 16, 2024, regarding [Mother's] petition for special relief filed [i]n June . . . 2024, and [Father's] counter-petition for special relief filed [i]n August . . . 2024. During the August 16, 2024 proceeding, the parties were requesting that the court decide whether the minor Child repeat prekindergarten at the . . . Academy or be enrolled in kindergarten at the Dallas Elementary School for the 2024-2025 academic year. This court held a full evidentiary hearing, where [Mother] and [Father] were both represented by counsel, following which the court issued an order dated August 19, 2024 that provided that the minor Child be enrolled for a second year of pre[]kindergarten at the . . . Academy and that [Father] be responsible for the tuition for the 2024-2025 tuition.
>
> [Mother] was represented by legal counsel at the time of the August 16, 2024 proceeding, and at the July 7, 2025 proceeding. As the court had already heard a considerable amount of testimony at the August 16, 2024 hearing about school choice between [the] Academy and Dallas Elementary, the court raised

this issue [of avoiding the presentation of duplicative evidence and testimony that was already provided at the prior hearing] on the record with both counsel and the parties present. Based on the agreement of both counsel on behalf of their respective clients, the court limited testimony at the July 7, 2025 hearing to any new information going forward, so that the information that was already testified to did not need to be repeated. Additionally, the issue was even further narrowed at the July 7, 2025 hearing, as both parties were in agreement that the minor Child was ready to attend kindergarten for the 2025-2026 school year. Counsel for both parties had an opportunity to object to the court's proposal to limit testimony at this hearing to any changes that have taken place since the parties were last before the court on the same issue—the school choice between [the] Academy and Dallas Elementary School. Neither party lodged an objection, and both parties agreed to move forward based on that ruling. [*See*] N.T.[, 7/7/25, at] 3-4.

As [Mother's] counsel at the time of the hearing did not make a timely objection to the limitation placed on testimony at the time of the July 7, 2025 hearing, [her] claim to that issue has been waived. Additionally, [Mother] herself was in court at the time that this conversation took place and made no attempt to independently raise any concern with limiting testimony despite her attorney's agreement to the same. The fact that [Mother] now has new counsel representing her does not negate the fact that the issue has been waived by previous legal counsel.

Trial Court Opinion, 9/9/25, at 5-6 (unnecessary capitalization omitted, some capitalization added).

Our review of the record confirms that, at the outset of the July 7, 2025 hearing, the trial court explained to the parties and their counsel that there was a hearing on the same issue one year prior, and that the court wished to avoid the presentation of duplicative evidence and testimony. *See* N.T., 7/7/25, at 3. The court specifically asked, "Counsel, do you have any objection to limiting testimony as to any changes since the last hearing on

this?" *Id*. Notably, neither Mother nor her counsel voiced any objection to the trial court's decision to limit the scope of the July 7, 2025 hearing to new information. *See id*. at 3-4. Thus, as Mother failed to preserve this aspect of her first issue by objecting to the trial court's proposed limitation, it is waived.

With respect to Mother's claim that the trial court should have conducted an *in camera* interview of Child, the record reflects that Mother's counsel specifically asked the trial court *not* to interview Child, stating "[w]e don't want the Child at this point interviewed due to circumstances that have arisen . . . Mother will testify why she doesn't want that." N.T., 7/7/25, at 3-4. Curiously, Mother's brief makes no mention of the fact that she specifically requested that Child *not* be interviewed. Instead, she merely concedes that she did not request the trial court to conduct such an interview. *See* Mother's Brief at 15; *compare Bovard*, 775 A.2d. at 841 (declining to find waiver of mother's claim that the trial court should have conducted an *in camera* interview of the children, aged ten through sixteen, where mother asserted that *she had requested* that they be interviewed). Thus, as Mother specifically asked the trial court *not* to conduct an *in camera* interview of Child, she waived any claim that the court abused its discretion by failing to do so.

We additionally note that Mother did not raise this issue in her concise statement. *See* Concise Statement, 8/25/25, at 1-3. Rule 1925 is a crucial

component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. *See Tucker v. R.M. Tours*, 939 A.2d 343, 346. For this reason, any issues not raised in the concise statement are deemed waived. *See id*.; *see also* Pa.R.A.P. 1925(b)(4)(vii) (providing that issues not included in the concise statement are waived). Here, the trial court did not address Mother's claim regarding an *in camera* interview of Child because Mother did not include it in her concise statement. Thus, it is waived for this additional reason. Accordingly, as Mother failed to preserve any aspect of her first issue for our review, we conclude that no relief is due.[2]

_____

[2] We note that Mother asserts that "issues that are pertinent to the best interests of the child cannot be waived in custody cases." *See* Mother's Brief at 22. In support of her assertion, Mother cites to *Bovard v. Baker*, 775 A.2d 835, 838-39 (Pa. Super. 2001). Therein, the Court stated, "where a child's best interests are at stake, we are *reluctant* to find waiver in child custody cases." *Id*. (emphasis added). The *Bovard* Court did not hold, as Mother incorrectly claims, that issues pertinent to the best interests of the child *cannot be waived* in custody cases. Moreover, the cases relied upon by the *Bovard* Court in expressing a general reluctance to find waiver in custody cases concerned the post-verdict procedural filings that are typically required in civil proceedings to preserve issues for appellate review. *See Moore v. Moore*, 634 A.2d 163, 166-67 (Pa. 1993) (holding that "post-trial motions are an unnecessary step in a custody appeal as the concept of waiver would be inappropriate in a case where the welfare of the child is the ultimate concern of the [c]ourt"); *see also Seger v. Seger*, 547 A.2d 424, 425 (Pa. Super. 1988) (holding that "[w]e cannot allow the procedural aspects of custody matters to take precedence over the welfare of the child, therefore, a custody [o]rder is a final, appealable [o]rder, reviewable by this Court without any intervening procedures, such as exceptions, being necessary"). Here, the trial court did not find waiver based on Mother's failure to raise certain issues in her motion for reconsideration. Rather, the trial court found waiver on the
*(Footnote Continued Next Page)*

In her second issue, Mother contends that the trial court "fail[ed] to give due consideration to the fact that the . . . Academy is a private, religious school, the mission of which is to train its students in the Bible, while Mother is not religious."  Mother's Brief at 17 (unnecessary capitalization omitted).  Once again, we must determine whether Mother preserved this issue for our review.  **See Hong**, 765 A.2d at 1123; **see also** Pa.R.A.P. 302(a).

The trial court considered Mother's second issue and determined that it was waived.  The court reasoned:

> In [her second issue, Mother] attempts to submit new proposed facts for the appellate court to consider as evidence on which to find this court's decision to be in error.  . . .
>
> None of the purported information contained in [Mother's second issue] was submitted at the time of the hearing by either party.  As these purported facts and/or suggested conclusions were not placed in evidence and were not before this court to consider, they cannot be subsequently raised on review.

Trial Court Opinion, 9/9/25, at 11 (unnecessary capitalization omitted).

Based on our review, we conclude that Mother failed to preserve this issue for our review.  At the July 7, 2025 hearing, Mother did not present any evidence regarding the mission of the Academy in general, let alone that it had a specific mission to train its students in the Bible.  **See** N.T., 7/7/25, at 3-35.  Further, although Mother testified at the hearing, she did not testify or

---

basis that Mother failed to object to its rulings in the trial court, at a time when the court could have addressed the objection, or failed to present any evidence or testimony on certain issues at the hearing for the court to consider in making its determination.  **See** Trial Court Opinion, 9/9/25, at 6-7, 10-13.

present any evidence to the trial court that she is not religious. *See id*. Finally, Mother presented no testimony or argument to the trial court that she objected to Child's attendance at the Academy on the basis that it is a private, religious school. *See id*. Thus, as Mother failed to raise this issue before the trial court, it is waived. *See Hong*, 765 A.2d at 1123; *see also* Pa.R.A.P. 302(a).

In her third issue, Mother contends that the trial court abused its discretion by determining that Child's attendance at the Academy for kindergarten during the 2025-2026 school year was in Child's best interests.[3] Mother initially argues that the trial court failed to give due consideration to the fact that neither parent resides in the school district where the Academy is located, as Mother resides in the Dallas School District, and Father resides in the Wilkes-Barre School District. According to Mother, Father testified that the students who attend the Academy come from a large area. Mother submits that, going to a school in the neighborhood where Child lives, instead of one where he does not reside, would provide Child with the opportunity to have friends in his immediate vicinity.

_____

[3] In her brief, Mother indicates that her third issue is a combination of fifteen of the issues that she raised in her concise statement. *See* Mother's Brief at 19. Notably, however, the trial court determined that several of those fifteen issues were waived because: (1) they were vague and ambiguous; (2) they did not identify any purported error by the trial court; or (3) no evidence or testimony regarding those issues was presented at the July 7, 2025 hearing. *See* Trial Court Opinion, 9/9/25, at 6-7, 10-13.

- 11 -

Mother additionally contends that the trial court failed to consider the distance and time that Child would have to travel to and from the Academy. Mother points to Father's testimony that both parents have a commute to the school of between fifteen minutes to twenty-five minutes from their place of residence. Although Mother provided no testimony at the July 7, 2025 hearing regarding her commute to the Academy, she claims that she previously testified at the 2024 hearing that it took her twenty-seven to twenty-eight minutes to get Child to the Academy. Mother points out that, although the trial court noted that she testified that she would be able to transport Child to and from the Academy, neither parent said they would be unable to take the Child to the Academy. Mother submits that the question is whether the distance is in the best interest of the Child, and by focusing on the parent's inconvenience, the trial court failed to appropriately evaluate the impact on the Child.

Mother also claims that the trial court failed to consider that Child previously attended prekindergarten on a part-time basis, for three mornings per week, whereas kindergarten is for five full days per week. Mother notes that Child's classes at the Academy commence at 8:00 a.m., while classes at the Dallas School District commence at 9:00 a.m., necessitating Child to wake up an hour earlier for class at the Academy. Mother submits that this change in the school schedule necessitates more time in commuting for Child, which

would be cut down by Child attending school in the location of one of his parent's residences.

Mother further argues that the trial court failed to consider the fact that the Dallas School District provides four separate kindergarten classes, while the Academy is essentially a single room accommodating students from kindergarten through the tenth grade, and that the cafeteria, gymnasium, and classroom were all the same room. Mother also asserts that the Academy offers enrollment only through the tenth grade, necessitating a change in a child's educational program part-way through senior high school.

Finally, Mother points to her testimony regarding her concern that Child is not progressing, as evidenced by the two writings from Child that she presented at the hearing. Mother also points to her testimony that there are no reading specialists or counselors at the Academy. Mother objects to the trial court's rejection of this concern on the basis that there was no testimony presented at the hearing that Child requires a reading specialist.[4]

---

[4] Mother additionally argues that the trial court failed to consider the superior educational opportunities and facilities of the Dallas School District by comparison to the Academy, including a graded curriculum, gifted and special education programs, foreign language, art, music and physical education classes, the availability and provision of technology, and extracurricular activities. The trial court determined that this issue was waived because no evidence or testimony regarding it was presented at the July 7, 2025 hearing. **See** Trial Court Opinion, 9/9/25, at 10-11. Here, our review of the record confirms that no evidence or testimony was presented to the trial court regarding this particular issue. **See** N.T., 7/7/25, at 3-35. Thus, Mother failed to preserve it for our review. **See Hong**, 765 A.2d at 1123; **see also** Pa.R.A.P. 302(a).

The trial court considered Mother's third issue and determined that it lacked merit. The court reasoned:

> [Father] testified that when he has custody of the minor Child, his commute to the . . . Academy from his residence is approximately fifteen (15) to twenty (20) minutes each way. [Father] testified that he has been able to get the Child to and from school at [the Academy] with no issues. [Father] further testified to his knowledge [Mother] has approximately a twenty-five (25) minute commute and had no issues getting the Child to and from [the Academy] from her residence on her days of custody. [Father] raised no concerns with [Mother's] ability to transport the Child to and from [the Academy]. [Father] testified that if the Child were to attend Dallas, although the Child would have virtually no commute to school while with [Mother], it would increase the Child's commute while with [Father] from fifteen (15) to twenty (20) minutes to twenty (20) to twenty-five (25) minutes from [Father's] residence to the school.
>
> [Mother] did not offer testimony regarding the distance between her residence and [the] Academy. [Mother] did testify that if the Child were to attend Dallas Elementary School, her residence is approximately five (5) to six (6) minutes away from the school. During her testimony, [Mother] raised no concern with the distance or time that the minor Child spends traveling to and from her residence to [the Academy] when the Child is in her custody. [Mother] was specifically asked whether she would be able to get the minor Child to and from [the Academy] for the 2025-2026 school year if he were to attend the five (5) per week kindergarten program at [the] Academy, to which [Mother] responded "[a]bsolutely, yes." N.T.[, 7/7/25, at] 31[].
>
> The court did not find a maximum of twenty-five (25) minutes to be an unreasonably long commute for either party, or for the minor Child. The Child has already been traveling to and from [the] Academy for the past two (2) academic years. There was no testimony or evidence presented by either party that this distance would be a hardship on either of them, or on the minor Child, or that this distance has caused any issue with the minor Child thus far. Moreover, if the Child were to attend Dallas Elementary as [Mother] proposed, the Child would still need to commute twenty (20) to twenty-five (25) minutes to and from school on [Father's] days of custody.

Distance from each residence to the school is only one of the many factors that the court took into consideration. The court's ultimate decision was based upon a totality of the circumstances, significantly that the minor Child has been attending the . . . Academy for two (2) years, is familiar with the students, staff, and environment, and has demonstrated academic improvement, which is a source of consistency and stability in the minor Child's life. [The] Academy has smaller class sizes, which increases individual attention for students. Additionally, the minor Child is active with the Mountain Top Church community while in Father's custody. Based upon the totality of the circumstances, the court concluded that having the Child enrolled in [the] Academy was in the Child's best interest for this particular year of schooling. . . .

\* \* \* \*

Both parties agreed that the minor Child's preschool schedule was part time, and he attended school on Tuesday, Wednesday, and Thursday from 9:00 a.m. until 11:30 a.m. Both parties further agreed that the kindergarten program at [the] Academy is five (5) full days per week. Neither party testified to any concern that he or she has with the Child transitioning from a partial week program schedule to a full week schedule. However, [Father] did testify that "kindergarten is a big enough change going from partial days to full days and [he] believes that keeping the Child at [the] Academy where he is already familiar with the environment will provide more stability during this change than switching to a new school. [*Id*. at] 9[]. [Mother] testified that two (2) more days per week would require her to drive the Child to school more, however [she] then testified that she will have no issue getting the Child to and from school every day if he attends [the] Academy. *See* [*id*. at] 17-18[,] 31[].

Significantly, both the . . . Academy kindergarten program and the Dallas Elementary School kindergarten program are full-time, five (5) days per week programs. As the weekly length was the same for both kindergarten options, this fact had no effect on the court's determination whatsoever. . . .

\* \* \* \*

[Father] testified that [the] Academy presently has classes through tenth (10th) grade. [*Id*. at] 10[]. [Father] did not express any concerns regarding the fact that [the] Academy does not offer eleventh (11th ) and twelfth (12 ) grade classes at this point. [Mother] did not offer testimony regarding what grades [the] Academy has classes for, nor did [she] testify regarding any concerns that she has with the Child attending [the] Academy based upon what grades the school offers. Neither party expressed any concern that the fact that [the] Academy only offers classes through tenth (10th) grade would have any effect on the child's kindergarten education, or overall education moving forward.

Therefore, as [Mother] did not raise this issue during the July 7, 2025, hearing, this issue has been waived. Additionally, the court notes that the order dated July 10, 2025, specifically limited a decision for the child's enrollment to the 2025-2026 kindergarten year. There was no determination by this court at any time that the child will remain enrolled in the . . . Academy through the duration of the Child's education if the school permits. . . .

* * * *

[Mother] initially testified that [the] Academy has no gymnasium and that the children play outside in a parking lot and a grassy area that is not fenced and next to a busy road. [*Id*. at] 19[]. Following this testimony, [Mother] clarified that there is a room in the church building at the school that is multiuse and functions as a "kid's playroom"/gymnasium and is converted to the cafeteria for the children to eat in. *Id*. [at] 13-17.

[Mother] provided a photograph of the room she was referring to, which was admitted into evidence. [Mother] did not offer any testimony regarding how the gymnasium and/or cafeteria set-up at the . . . Academy in any way negatively impacts the minor Child's education or well-being. Although [Mother] made a statement about the grassy area outside being unfenced, [she] did not testify that the children have inadequate supervision or that there have been any issues with this Child, or any other children, being in danger or injured because the grassy area is unfenced.

As discussed above, the court's ultimate decision was based upon a totality of the circumstances, significantly that the minor Child has been attending the . . . Academy for two (2) years, is familiar with the students, staff, and environment, and has demonstrated academic improvement, which is a source of consistency and stability in the minor Child's life. [The] Academy has smaller class sizes, which increases individual attention for students. Additionally, the minor Child is active with the Mountain Top Church community while in Father's custody. Based upon the totality of the circumstances, the court concluded that having the child enrolled in [the] Academy was in the Child's best interest for this particular year of schooling. The fact that the school's gymnasium and cafeteria are not as nice as Dallas Elementary School's accommodations in [Mother's] opinion did not outweigh the other substantial reasons for the court to order that the Child change schools for the kindergarten school year. . . .

Trial Court Opinion, 9/9/25, at 7-10, 12-13 (footnotes and unnecessary capitalization omitted, some capitalization added).

As explained above, we review a custody order for an error of law or a gross abuse of discretion, such as where the trial court overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record. **See Rogowski**, 291 A.3d 50, 60-61. Based on our review, we discern no error or gross abuse of discretion by the trial court in ordering that Child attend kindergarten at the Academy for the 2025-2026 school year.

Furthermore, we must accept the findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. **See id**. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial

court who viewed and assessed the witnesses first-hand. *See id*. To the extent that Mother asks this Court to make different factual findings or to accord greater weight to her testimony and lesser weight to Father's testimony, we cannot do so. *See id*. Accordingly, as our review establishes that the trial court's consideration of Child's best interests was careful and thorough, and it factual findings are supported by competent evidence of record, we affirm the trial court's order. *See R.M.G.*, 986 A.2d at 1237 (holding that appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough).

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/22/2026